[Civ. No. 45382. Second Dist., Div. Five. June 27, 1975.]

EUGENE WINTERS, Plaintiff, Cross-defendant and Appellant, v.
SECURITY PACIFIC NATIONAL BANK,
Defendant, Cross-complainant and Appellant.

## COUNSEL

Richard A. Weisz and Toby J. Rothschild for Plaintiff, Cross-defendant and Appellant.

Iverson, Yoakum, Papiano & Hatch, Patrick McAdam, Sheppard, Mullin, Richter & Hampton, George R. Richter, Jr., John A. Sturgeon and Ronald M. Bayer for Defendant, Cross-complainant and Appellant.

Almon B. McCallum as Amici Curiae on behalf of Defendant, Cross-complainant and Appellant.

## OPINION

**STEPHENS, Acting P. J.**—The principal issue in this case is whether the Rees-Levering Motor Vehicle Sales and Finance Act (RLA) (Civ. Code, § 2981 et seq.) prohibits an automobile dealer or assignee from retaining legal title to a vehicle in order to secure payment of additional amounts it charged to the buyer for the purchase of vendor's single interest (VSI) insurance.

### Facts

Since the facts are not in dispute, we adopt them substantially as set forth in the stipulation of agreed statement of facts.

On July 5, 1968, plaintiff Eugene Winters purchased a used 1965 Chevrolet automobile from Parkwood Chevrolet. The total purchase price of $2,299.20 was to be paid in 30 monthly installments of $56.64 commencing August 12, 1968, with a down payment of $500, and a pickup payment of $100 due on July 31, 1968. On July 12, 1968, Parkwood Chevrolet assigned the conditional sales contract to defendant Security Pacific National Bank (the bank). Thereafter, plaintiff paid off his monthly installments and requested that the bank transfer the certificate of legal title to him. The bank refused, asserting that plaintiff had not paid an additional $84.23 which represented the amount paid by the bank during the contract period for VSI insurance which protected the bank's interest in the automobile during the period in which plaintiff's insurance coverage had lapsed.[1] The bank asserts that it was

---

[1] Both parties were notified by plaintiff's insurance company on eight occasions during the contract period that, unless payment was received by a certain date, plaintiff's insurance policy would be cancelled. On each of the eight occasions, the bank purchased a VSI insurance binder at a cost of $10 per binder. The total cost of the binders and other

authorized to retain a security interest by reason of the following provision in the conditional sales contract:

". . . . Buyer will obtain, pay for and keep Property, Seller and Buyer insured through agents and in companies approved by Seller against loss by collision, fire, theft, and such other risks as may be mutually agreed upon by Buyer and Seller. All policies are to contain a loss payable clause in form acceptable to Seller, naming Seller as loss payee, and will be delivered to Seller and held by Seller as security for this Contract, and in the event of repossession, as Seller's sole property. Seller is hereby authorized to make any claim thereunder, to cancel same upon default, and to receive payment of, to endorse any instrument and payment of loss or return premium, and to apply any money so received on amount due thereunder. Buyer's failure to obtain insurance coverage as specified above shall constitute an event of default. However, Seller has the option of obtaining either Vendor's Single Interest (Covers interest of Bank only) or Dual Interest Coverage (Covers interest of Buyer and Bank for physical damages only) and *adding the cost of the insurance premium together with any financing charge to the contract balance and apportioning this added cost between the installment payments remaining to be paid by the Buyer*." (Italics added.)

Plaintiff brought suit for declaratory relief and specific performance, demanding that the bank execute and deliver the certificate of title to the vehicle and release its security interest. The bank filed a cross-complaint seeking payment for the VSI insurance. The court entered judgment in favor of plaintiff on the complaint, and in favor of the bank on the cross-complaint. The court, however, refused to award plaintiff attorney's fees because he was represented by the Legal Aid Foundation of Long Beach.[2] The bank appeals from the judgment on the complaint, and plaintiff appeals from the denial of attorney's fees. Plaintiff does not appeal from the cross-complaint.

---

charges amounted to $84.23. However, with the exception of one four-day period, plaintiff's insurance remained in effect at all times.

A binder for VSI insurance is effective for 30 days and gives the creditor the benefit of insurance even though a VSI policy has not been issued. A VSI policy can only be issued 30 days after the effective date of the binder. Thus, the binder gives the buyer an additional 30-day period in which to have his insurance reinstated and avoid having the full VSI premium added to the contract balance.

[2]The court found that "Plaintiff . . . is represented by an attorney from the Legal Aid Foundation of Long Beach, a program funded by the United States government through the Office of Economic Opportunity. If [plaintiff] was represented by a private law firm, he would be entitled to an award of attorney's fees."

■ We conclude that the bank's retention of legal title to the vehicle to secure payment of VSI insurance (which we assume was added to the contract balance) violated the RLA. Civil Code section 2981, subdivision (i), as it read at the time the contract was entered into defined the term "contract balance" as the "amount unpaid under the conditional sale contract, which the buyer agrees to pay in installments to the seller as originally provided therein, *and shall not include amounts for which the buyer may later become obligated under the terms of the contract in connection with insurance,* repairs to or preservation of the motor vehicle, *preservation of the security interest therein, or otherwise. . . .*" (Italics added). This section specifically precludes the addition of insurance onto the contract balance for which the purchaser becomes obligated *after* the contract is entered into.[3]

Civil Code section 2981, subdivision (a) (1), defines "conditional sale contract" as "[a]ny contract for the sale of a motor vehicle . . . [where] title vests in the buyer . . . only upon payment of all or part of the [purchase] price . . . ."[4] In *Bowden* v. *Bank of America,* 36 Cal.2d 406, 414 [224 P.2d 713], the Supreme Court held that in a conditional sale, the title in the seller is for security only, to assure payment of the purchase price. As the court succinctly stated, " '[t]he sole interest of the seller is in the receipt of the price, and his reserved title cannot be used for any other purpose. Hence it follows that *tender of the balance of the price* should have the effect of discharging the title of the seller and vesting such title in the buyer. . . .' " (Italics added.) Therefore, title vested in plaintiff when he made his final payment as specified in the contract balance (excluding any added charges) at the time he entered the contract.

The underlying rationale of the disclosure requirements of section 2982, subdivision (a), was expressed by the court in *City Lincoln-Mercury Co.* v. *Lindsey,* 52 Cal.2d 267, 272-273 [339 P.2d 851], as follows: "The provision of section 2982, subdivision (a), requiring recital of all the items there enumerated [in the contract] is for the protection of the purchaser. . . . Obviously the provision requiring the express statement of the time price differential and the *contract balance was enacted to ensure*

---

[3]The RLA does not preclude the inclusion of insurance in the contract balance agreed upon when the contract is entered into, but the cost of the insurance must be disclosed on the face of the contract. (Civ. Code, § 2982, subd. (a)(4).)

[4]Section 2981, subdivision (a)(3), also defines "conditional sale contract" as "[a]ny contract for the sale of a motor vehicle . . . [where] a lien on the property is to vest in the seller as security for the payment of part or all of the [purchase] price . . ."

*that the buyer, when he enters into the contract, is aware of the . . . total extent of the indebtedness to which he will become subjected."* (Italics added.)

Moreover, the RLA was designed to provide the buyer protection against the situation where he defaults in the payment of an additional charge which would result in the repossession of the vehicle. "The buyer may incur a substantial loss through a minor default." (*Recent Legislation, The Rees-Levering Motor Vehicle Sales and Finance Act,* 10 U.C.L.A. L.Rev. 125, 136, fn. 61.) Accordingly, we conclude that when the "contract balance" is paid, the bank may not withhold title to the vehicle in an effort to secure payment of the VSI insurance premiums.

Section 2982, subdivision (f), which the bank relies on in support of its position is inapplicable to the present case. This section provides that the inclusion of VSI insurance does not violate the disclosure requirements of section 2982, subdivision (a).[5] It has nothing to do with the retention of security by the bank.

*Attorney Fees*

■ The only issue involved in plaintiff's cross-appeal is whether the court erred in not awarding him attorney fees solely because he was represented by a federally funded Legal Aid attorney. This court has recently held that where a statute allows for attorney fees, these fees may not be denied simply because the prevailing party is represented by Legal Aid attorneys. (*Horn* v. *Swoap,* 41 Cal.App.3d 375, 383-384 [116 Cal.Rptr. 113]; *Trout* v. *Carleson,* 37 Cal.App.3d 337, 344 [112 Cal.Rptr. 282].) The RLA does contain a mandatory attorney fees provision. Civil Code section 2983.4 provides: "Reasonable attorney's fees and costs *shall* be awarded to the prevailing party in any action on a conditional sale contract subject to the provisions of this chapter . . . ." (Italics added.)

---

[5]Section 2982, subdivision (f): "Notwithstanding any other provision of this chapter to the contrary, in any instance in which *vendor's single interest insurance* is to be written in connection with a conditional sale contract, a conditional sale contract *complying with the applicable disclosure requirements of Regulation Z, as in effect on the date of such contract, shall be deemed to comply with the requirements of paragraphs 1 to 8, inclusive, of subdivision (a),* irrespective of any difference between the provisions of that regulation and this chapter with respect to any information to be disclosed, the terminology, form or content of such disclosures, the amounts to be included in or manner of determining the unpaid balance, the finance charge or any other item of information to be disclosed, or otherwise. . . ." (Italics added) This section was enacted in 1970.

Accordingly, the court erred in not awarding the Legal Aid Foundation reasonable attorney fees.[6]

The judgment is affirmed except for that portion denying attorney fees to plaintiff. The case is remanded and the trial court is directed to make such order for attorney fees as it deems reasonable, including appropriate fees on appeal. The superior court shall order attorney fees to be paid directly to the Legal Aid Foundation of Long Beach.

Costs on appeal are awarded to plaintiff.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 17, 1975, and the petition of the defendant and appellant for a hearing by the Supreme Court was denied September 4, 1975. McComb, J., did not participate therein.

---

[6]The bank waived attorney fees on its cross-complaint during trial.