488 S.E.2d 414

**Karen PEARSON, Plaintiff
Below, Appellant**

v.

**Roger PEARSON, Defendant
Below, Appellee.**

No. 23679.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 5, 1997.

Decided March 21, 1997.

Dissenting Opinion of Chief Justice
Workman July 21, 1997.

Marcelle St. Germain, Logan, for Appellant.

James A. Walker, Logan, for Appellee.

DAVIS, Justice:

This appeal arises from an order of the Circuit Court of Logan County which granted a divorce to Karen Pearson, plaintiff/appellant, (hereinafter referred to as plaintiff) and Roger Pearson, defendant/appellee, (hereinafter referred to as defendant). On appeal the plaintiff alleges that the circuit court committed error with respect to the following: (1) the amount of permanent alimony; (2) the denial of lump sum or enhancement award; (3) the termination of alimony when defendant reaches 65; (4) the issuance of a restraining order; (5) awarding defendant a credit union account; (6) the failure to award attorney's fees; and (7) awarding defendant a Nissan Maxima, goods and furnishings, and the marital home.

## I.

### FACTUAL BACKGROUND

The parties were married on September 25, 1969. Two children, now adults, were born from the marriage. The record indicates that the plaintiff did not work outside the home during the marriage. Plaintiff was a full-time homemaker. The defendant was employed throughout the marriage as a railroad employee with CSX Transportation.

The first significant problem between the parties occurred in 1987. In 1987, plaintiff suffered facial injuries as a result of a domestic fight with the defendant. The parties separated temporarily after this incident.

The record does not disclose any problems in the marriage after the 1987 incident, until the plaintiff filed for divorce in May of 1993. As grounds for divorce the complaint alleged cruel treatment, alcoholism and irreconcilable differences. The defendant filed a counterclaim seeking a divorce on the grounds of cruelty and irreconcilable differences.

The family law master held evidentiary hearings in this matter on October 12, 1994 and November 16, 1994. A recommended decision, that included granting a divorce on grounds of irreconcilable differences, was filed by the family law master on April 14, 1995. The plaintiff petitioned for review of the recommended order. The circuit court issued a final order on March 28, 1996, which adopted all of the family law master's recommendations except one. The circuit court found that the family law master abused her discretion in awarding the sum of $150 per month as alimony to plaintiff. The circuit court increased alimony to $375 a month. The plaintiff thereafter prosecuted this appeal. The plaintiff has assigned as error: (1) the amount of permanent alimony; (2) the denial of lump sum or enhancement award; (3) the termination of alimony when defendant reaches 65; (4) the issuance of a restraining order; (5) awarding defendant a credit union account; (6) the failure to award attorney's fees; and (7) the award to defendant of the Nissan Maxima, goods and furnishings, and the marital home.

## II.

### STANDARD OF REVIEW

We begin our analysis by setting out the standard in which this Court reviews challenges to an equitable distribution order of a circuit court. We outlined that standard succinctly in syllabus point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a de novo review.

*See also* Syl. Pt. 2, *Hillberry v. Hillberry*, 195 W.Va. 600, 466 S.E.2d 451 (1995). It was noted by this Court in syllabus point 1 of *Stephen L.H. v. Sherry L.H.*, 195 W.Va. 384, 465 S.E.2d 841 (1995) that "[a] circuit court should review findings of fact made by a family law master only under a clearly erroneous standard, and it should review the application of law to the facts under an abuse of discretion standard." We explained in syllabus point 3 of *Stephen L.H.*, that "[u]nder the clearly erroneous standard, if the findings of fact and the inferences drawn by a family law master are supported by substantial evidence, such findings and inferences may not be overturned even if a circuit court may be inclined to make different findings or draw contrary inferences."

With the above principles in view we now turn seriatim to plaintiff's assignments of error.

### A.

#### Sufficiency Of Alimony Amount

The plaintiff contends that her award of $375 per month as alimony is insufficient to maintain the style of living to which she was accustomed during her marriage. Factors which a circuit court must consider in determining the issue of alimony are set out

in W.Va.Code § 48–2–16(b) (1984).[1] This Court noted in syllabus point 1, in part, of *Corbin v. Corbin*, 157 W.Va. 967, 206 S.E.2d 898 (1974), *modified, In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978) that "no specific weight is assigned to any one criterion, and the trial judge in his sound discretion may accord such weight to any or all of these criteria as he deems appropriate." We have also long held that "[t]he decision to grant or deny alimony is reviewed by this Court for an abuse of discretion." *Banker v. Banker*, 196 W.Va. 535, 548, 474 S.E.2d 465, 478 (1996). In the single syllabus of *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977) we held that:

> Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.

*See* Syl. Pt. 2, *Wood v. Wood* (II), 190 W.Va. 445, 438 S.E.2d 788 (1993); Syl. Pt. 8, *Wyant v. Wyant*, 184 W.Va. 434, 400 S.E.2d 869 (1990); Syl., *Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985).

In *Banker* we gave the following explanation of the three principal ways in which an abuse of discretion might arise:

> An abuse of discretion occurs in three principal ways:
>
> (1) when a relevant factor that should have been given significant weight is not considered; (2) when all proper factors, and no improper ones, are considered, but the family law master in weighing those factors commits a clear error of judgment; and (3) when the family law master fails to exercise any discretion at all in issuing the order.

*Banker*, 196 W.Va. at 548, 474 S.E.2d at 478.

In the instant proceeding, the family law master recommended alimony for the plaintiff as follows: (1) rehabilitative alimony in the amount of $500 per month for thirty months, which totaled $15,000; and (2) permanent alimony of $150 per month until plaintiff remarries, either party dies, the defendant attains the age of sixty-five, or further order of the court. The circuit court adopted the alimony recommendation except for the amount of permanent alimony. The final order of the circuit court found "[t]hat the award of permanent alimony by the Fam-

1. W.Va.Code § 48–2–16(b) provides in relevant part:

(b) ... The court shall consider the following factors in determining the amount of alimony ... if any, to be ordered ...:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(9) The anticipated expense of obtaining the education and training described in subdivision (8) above;

(10) The costs of educating minor children;

(11) The costs of providing health care for each of the parties and their minor children;

(12) The tax consequences to each party;

(13) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(14) The financial need of each party;

(15) The legal obligations of each party to support himself or herself and to support any other person; and

(16) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

ily Law Master in the amount of one hundred fifty dollars was an abuse of discretion when the chances of rehabilitation of the plaintiff are carefully considered in light of her age, education, and job potential in the current economic situations." The circuit court determined that a fair amount of permanent alimony would be $375 per month.

▮▮▮ Plaintiff urges this Court to award her permanent alimony in the amount of $1,300 per month. The record indicates that at the time of the divorce, the defendant's net income was $2,800 per month. With the exception of one credit card debt, the defendant was ordered to pay all of the marital debts.[2] Additionally, the defendant was required to borrow $34,000 to pay the plaintiff her equitable share of the marital home. In view of the limited financial resources of the parties during the marriage and the assumption of the marital debts by the defendant, there is no factual or legal basis to support an alimony award of $1,300 per month. We made abundantly clear in syllabus point 2 of *Sandusky v. Sandusky*, 166 W.Va. 383, 271 S.E.2d 434 (1981) that " '[a]limony must not be disproportionate to a [person's] ability to pay as disclosed by the evidence before the court.' Syllabus, *Miller v. Miller*, 114 W.Va. 600, 172 S.E. 893 (1934)."[3]

▮▮▮ Moreover, we pointed out in *Hardy v. Hardy*, 197 W.Va. 243, 247, 475 S.E.2d 335, 339 (1996) that "*Stephen L.H. v. Sherry L.H.* and its progeny require substantial deference be given to a family law master's factual findings and recommendations[.]" The circuit court rejected the family law master's recommendation on the amount of alimony on the grounds that employment prospects for the plaintiff were nonexistent in view of

her age, education and the current job market. The record on appeal is devoid of any findings to support the circuit court's decision to set aside the family law master's recommendation of $150 per month alimony. The order is devoid of any analysis by the circuit court of the factors to be considered when one determines alimony pursuant to W.Va.Code § 48–2–16(b). As such, the final order is insufficient regarding the issue of alimony as the order provides no factual and legal basis by which this Court can facilitate meaningful review[4]. *See Province v. Province*, 196 W.Va. 473, 473 S.E.2d 894 (W.Va. 1996). Therefore, we are remanding this issue of alimony with instructions that the circuit court reinstate the recommendation of the family law master or provide findings to support an award of $375 per month.

### B.

### *Enhancement Award*

The plaintiff contends that the circuit court should have granted her an additional lump sum award in alimony to compensate her for the physical and emotional abuse she incurred during the marriage. Plaintiff indicated that a lump sum alimony award of $34,000 should have been granted. Additionally, the plaintiff contends the lump sum alimony award is justified on the grounds that the defendant was at fault in causing the divorce.

▮▮▮ We addressed the issue of an "enhancement" of an alimony award in syllabus point 4 of *Rogers v. Rogers*, 197 W.Va. 365, 475 S.E.2d 457 (1996), where we said:

In appropriate circumstances, an enhancement of an award of mainte-

---

2. The marital debt which Defendant was ordered to pay included the following debts: Master Charge $1,600; Discover $1,100; Visa $400; car note $10,000.

3. The plaintiff's brief recites a considerable number of our cases where we found the amount of alimony was insufficient. All of the cases cited by the plaintiff are factually distinguishable from the instant proceeding.

4. We note that defendant's brief states that since the date of entry of the circuit court's order, the plaintiff is employed and is earning $1,500 per

month. The plaintiff's reply brief did not refute her employment status. This Court will not consider evidence which was not in the record before the circuit court. *See O'Neal v. Peake Operating Co.*, 185 W.Va. 28, 404 S.E.2d 420 (1991) (this Court may only consider matters appearing in the trial record). However, consistent with *Hinerman v. Hinerman*, 194 W.Va. 256, 261, 460 S.E.2d 71, 76 (W.Va.1995), since the issue of alimony must be reconsidered by the circuit court, the statement of this court that plaintiff is earning $1,500 per month should be developed and considered below.

nance/alimony based on the degree of fault is justified. Enhancement of a maintenance/alimony award by a fault premium may be awarded when additional support is required to reimburse the injured spouse for expenses directly related to the fault or to assure that the injured spouse continues to have the standard of living enjoyed during the marriage. A fault premium may also be applied to discourage the fault or behavior that contributed to the dissolution of the marriage. In determining an award of maintenance/alimony enhanced by a fault premium, the *circuit court must consider the concrete financial realities of the parties.* (emphasis added).

The record in this case chronicles one incident where the defendant and plaintiff engaged in a fight and she sustained facial injuries. That incident occurred in 1987. The plaintiff left the home for a short period after this incident, but returned for six years before filing the instant divorce action. The record indicates further allegations by the plaintiff that she was abused, but no specific incidents were confirmed by testimony or documentary evidence. The plaintiff also alleges emotional abuse, but cites no specific pattern of conduct by the defendant that could reasonably be asserted as emotional abuse. Additionally, the divorce granted in this case was based upon irreconcilable differences.

■ Neither the family law master nor the circuit court deemed the plaintiff's abuse allegations to be supported by the evidence. Mere allegations standing alone without any proper proof or testimony cannot be considered as evidence by the family law master or circuit court. We indicated in *Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 61 n. 14, 459 S.E.2d 329, 338 n. 14 (1995) that "self-serving assertions without factual support in the record" have no force or effect. In *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. 692, 707, 474 S.E.2d 872, 887 (1996) we categorized such self-serving averments as "nothing more than an attorney's argument lacking evidentiary support." (Citation omitted.) Evidence presented in a divorce case must be consistent with our Rules of Civil Procedure, Rules of Evidence and Rules of Practice and Procedure for Family Law. A divorce proceeding is not an opportunity for lawyers to circumvent our procedural and evidentiary rules. Those rules are applicable in divorce actions with the same force and vibrancy as in any other civil proceeding.

■ Even if this Court disagreed with the circuit court and family law master on the issue of abuse by the defendant, when we "consider the concrete financial realities of the parties," it is inconceivable that the defendant would be able to pay the plaintiff an additional $34,000 as an alimony enhancement award. *See* Syl. Pt. 2, *Sandusky v. Sandusky, supra.* Further, based upon the record before this Court, the plaintiff has failed to show where an enhancement alimony award is justified in this case.

## C.

### *Termination Of Alimony*

The record indicates that at the time of the final hearing before the family law master the plaintiff was 46 years old and the defendant was 50 years old. The permanent alimony award given to the plaintiff automatically terminates, barring other factors, when the defendant turns 65 years old. The plaintiff presents two arguments regarding termination of her alimony award when the defendant reaches 65 years of age. Both arguments relate to defendant's retirement benefits.

Retirement benefits for railroad employees are governed by federal statute. As a railroad employee the defendant, upon retirement, is entitled to benefits under the Railroad Retirement Act of 1974, (hereinafter the "Act") 45 U.S.C. § 231 et seq. The Act's scheme provides for two *tiers* of benefits which resemble both a private pension program and a social welfare plan. Tier I benefits are equivalent to those the employee would receive if covered by the Social Security Act, 42 U.S.C. § 401 et seq. *See* 45

U.S.C. § 231a(a)(1) [5] and § 231b(a)(1).[6] Tier II benefits are supplemental annuities which, like a private pension plan, are tied to earnings and career service. *See* 45 U.S.C. § 231a(b) [7] and § 231b(e).[8]

In *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) the United States Supreme Court considered whether an award of railroad retirement benefits to a spouse when dividing marital assets upon divorce was prohibited by the Act. The United States Supreme Court held that 45 U.S.C. § 231m specifically prohibited the division of benefits payable under the Act as property in a divorce. However, in 1983, Congress provided an amendment to § 231m which *expressly permits* characterization of Tier II benefits as property subject to distribution upon divorce. *See* 45 U.S.C. § 231m(b)(2). Notwithstanding the 1983 amendment, the holding in *Hisquierdo* is still controlling with respect to Tier I benefits. *See* Syl. Pt. 1, in part, *McGraw v. McGraw*, 186 W.Va. 113, 411 S.E.2d 256 (1991) ("The Railroad Retirement Act of 1974, 45 U.S.C. Sec. 231m, expressly precludes from consideration as divisible marital property the basic railroad retirement annuity, which provides benefits equivalent to benefits under the Social Security Act.").

The plaintiff acknowledges that she is entitled to and has been awarded a share of the defendant's retirement benefits under the Tier II scheme of the Act. The plaintiff contends, however, that her Tier II benefits will not trigger until she reaches 65 years of age. This situation, contends the plaintiff, means that there will be a four year gap when she receives *no* maritally related income. We disagree. Our reading of 45 U.S.C.

§ 231a(c)(2) indicates that the plaintiff is eligible to receive Tier II benefits immediately upon reaching the age of 62. Therefore, plaintiff will be delayed one year (at age 61 when the defendant would have turned 65) from receiving her Tier II income arising out of the marriage.

■■■ This Court has not and will not award alimony based upon anticipated future events. Alimony is based upon the financial realities of the parties at the time of the divorce. *See F.C. v. I.V.C.*, 171 W.Va. 458, 460, 300 S.E.2d 99, 101 (1982) ("Concrete financial realities of the parties must be a court's primary inquiry in any alimony award."). However, nothing precludes plaintiff, when she attains age 61 from filing the appropriate petition to modify the alimony award. The circuit court's order specifically provided: "permanent alimony until plaintiff remarries, either party dies, defendant attains the age of 65, *or further order of the court*." (Emphasis added.) The circuit court has continuing jurisdiction to modify alimony based upon the financial realities of the parties. *See* Syl. Pt. 2, *Banker*:

Under W.Va.Code, 48–2–15(e) (1993), a circuit court has jurisdiction to hear and rule upon a motion seeking modification of a decree to include alimony, as the ends of justice may so require, even though the decree previously denied alimony or did not address the issue of alimony. To the extent that *Savage v. Savage*, 157 W.Va. 537, 203 S.E.2d 151 (1974), and its progeny are inconsistent, they are expressly overruled.

■■■ As we stated earlier, *Hisquierdo only* precludes Tier I benefits from being

---

**5.** 45 U.S.C. § 231a(a)(1) sets out the various circumstances that would allow a railroad employee to become eligible to receive Tier I benefits.

**6.** 45 U.S.C. § 231b(a)(1) provides as follows:

(1) The annuity of an individual under section 23a(a)(1) of this title shall be in an amount *equal to the amount* (before any reduction on account of age and before any deductions on account of work) of the old-age insurance benefit or disability insurance benefit to which such individual would have been entitled under the Social Security Act if all of his or her service as an employee after December 31,

1936, had been included in the term "employment" as defined in the Act.

**7.** 45 U.S.C. § 231a(b) sets out the various circumstances that would allow a railroad employee to become eligible to receive Tier II benefits.

**8.** 45 U.S.C. § 231b(e) provides as follows:

"The supplemental annuity of an individual under section 231a(b) of this title shall be $23 plus an additional amount of $4 for each year of service that the individual has in excess of 25 years, but in no case shall the supplemental annuity exceed $43."

considered as divisible marital property. *Hisquierdo* does not preclude the use of Tier I benefits to pay alimony. *See Kennedy v. Kennedy,* 53 Ark.App. 22, 28, 918 S.W.2d 197, 201 (1996) ("Appellee argues that, if he is required to pay alimony beyond retirement age, he will have to make those payments from his Tier I benefits, which are not divisible under federal law. Appellee, however, has not cited any law that restricts him from paying alimony from retirement benefits that he might receive."). Alimony is not divisible marital property. *See Banker,* 196 W.Va. at 545, 474 S.E.2d at 475 (" 'Alimony' has been defined by W.Va.Code, 48–2–1(a) (1992), to mean 'the allowance which a person pays to or in behalf of the support of his or her spouse ... after they are divorced.' "). Therefore, the plaintiff may seek to have alimony continued once the defendant reaches age 65.

▮ Lastly, the plaintiff contends that she is entitled to an offset from the marital property to compensate her for not being awarded any of defendant's Tier I benefits. This Court has never directly addressed the issue of offsetting Tier I benefits as a way of furthering equitable distribution of marital property. However, this argument was addressed and rejected in *Hisquierdo.* The Supreme Court held that "[a]n offsetting award ... would upset the statutory balance and impair [the employee spouse's] economic security just as surely as would a regular deduction from his benefit check." *Hisquierdo,* 439 U.S. at 588, 99 S.Ct. at 811, 59 L.Ed.2d at 15. Other jurisdictions have applied *Hisquierdo* to preclude offsetting Tier I benefits in a divorce action. *See Tarbet v. Tarbet,* 97 Ohio App.3d 674, 647 N.E.2d 254 (1994); *Belt v. Belt,* 398 N.W.2d 737 (N.D. 1987); *Larkin v. Larkin,* 415 N.W.2d 924 (Minn.App.1987); *Padezanin v. Padezanin,* 341 Pa.Super. 26, 491 A.2d 130 (1985); *Rommelfanger v. Rommelfanger,* 114 Wis.2d 175, 337 N.W.2d 851 (1983); *Kendall v. Kendall,* 106 Mich.App. 240, 307 N.W.2d 457 (1981); *Larango v. Larango,* 93 Wash.2d 460, 610 P.2d 907 (1980); *In re Marriage of Knudson,* 186 Mont. 8, 606 P.2d 130 (1980). Tier I benefits are akin to Social Security benefits.

Congress, in 1983, refused to incorporate Tier I benefits as property subject to distribution upon the granting of a divorce. Based upon the Congress' clear intent, as well as *Hisquierdo,* we likewise decline to deem the same as marital property subject to equitable distribution. In view of *Hisquierdo,* we hold that the Railroad Retirement Act of 1974, 45 U.S.C. § 231m specifically prohibits offsetting Tier I benefits in a divorce proceeding. Therefore, the plaintiff may not offset an equal division of marital assets to compensate her for not being awarded any portion of defendant's Tier I benefits. However, consistent with the position we have taken herein, plaintiff is not precluded from filing a petition for modification, once defendant begins to receive Tier I benefits, to request alimony based upon the financial realities of the parties at that time. Notwithstanding this fact, this Court cautions that all sources of income of the plaintiff and the defendant must be considered when, or if, the family law master or circuit court is called upon to rule upon any petition for modification.

### D.

### *Restraining Order*

Both parties alleged cruelty as grounds for divorce. As previously indicated the divorce was granted on grounds of irreconcilable differences. The family law master concluded from her observation of the parties that restraining orders would be appropriate against both parties. The circuit court, in its final order held "[t]hat each of the parties shall be restrained, enjoined and prohibited from in anyway or manner bothering, annoying or molesting the other, or threatening so to do." The plaintiff argues that a restraining order against her is not appropriate because the defendant did not present any evidence that she abused him. The defendant contends that, absent the 1987 mutual confrontation, no evidence was proffered to prove that he abused the plaintiff. No finding of abuse by either party was made by the lower tribunals.[9]

---

**9.** The record indicates that a temporary restraining order was in place against both parties dur-    ing the pending litigation.

■ We note that W.Va.Code § 48–2–15(b)(9) (1996) provides, in relevant part, that "[w]hen allegations of abuse have been proven, the court shall enjoin the offending party[.]" This provision makes it mandatory that a restraining order be entered against a spouse where it is shown by a preponderance of the evidence that such spouse abused the other spouse. In the instant proceeding the lower court made no finding of abuse by either the plaintiff or the defendant. Therefore, based upon a plain reading of the statute, the circuit court committed error in issuing restraining orders without a finding of abuse.[10]

## E.

### Credit Union Account

The circuit court awarded the defendant the balance of a credit union account. Neither the recommended order of the family law master, nor the circuit court's final order disclosed the value of this account. Further, the circuit court's order does not explain the basis for awarding the account to defendant, other than as the recommendation of the family law master. A review of the financial statements submitted by both parties does not disclose the existence of a credit union account. Pursuant to Rule 11, of the Rules of Practice and Procedure for Family Law, as well as West Virginia Code § 48–2–33 (1993) a full and complete disclosure of finances is required in all divorce actions. Thus, it is incumbent that a clear, concise and complete financial record for both parties be required by the family law master and lower court in order for this Court to establish meaningful review of the issues presented.

■ In addressing the issue of the sufficiency of a final order in a divorce proceeding, this Court stated in *Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894,

904 (1996) that "[t]he order must be sufficient to indicate the factual and legal basis for the family law master's ultimate conclusion so as to facilitate a meaningful review of the issues presented. Where the lower tribunals fail to meet this standard—i.e. making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." Moreover, we held in syllabus point 6 of *Wood v. Wood* (I), 184 W.Va. 744, 403 S.E.2d 761 (1991) that " '[a]n order directing a division of marital property in any way other than equally must make specific reference to factors enumerated in Sec. 48–2–32(c), and the facts in the record that support application of those factors.' Syllabus Point 3, *Somerville v. Somerville*, 179 W.Va. 386, 369 S.E.2d 459 (1988)." We cannot conduct a meaningful review of whether the credit union account was properly awarded to the defendant. We would also note that, although the plaintiff assigned this issue as error, the defendant did not address the matter in his brief. We therefore reverse and remand this issue for proper findings.

## F.

### Attorney's Fees

■ The circuit court did not award attorney's fees in this case. We noted in syllabus point 12 of *Mayhew v. Mayhew*, 197 W.Va. 290, 475 S.E.2d 382 (1996) that "[p]ursuant to W.Va.Code § 48–2–13(a)(6)(A), the court in a divorce proceeding may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court." In syllabus point 5 of *Rogers v. Rogers* we held:

> In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent

---

**10.** We hasten to point out that circuit courts have inherent general equity powers to issue restraining orders upon a proper evidentiary showing. Our ruling today does not erode from those powers. In the case *sub judice* we were called upon only to address issuance of a restraining order under W.Va.Code § 48–2–

15(b)(9). We reserve for another day the matter of issuance of a restraining order in a divorce proceeding, under the general equity powers of a court, when there has been no proof of statutory abuse, but the conduct of the parties during the proceedings indicate a need for a restraining order.

an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request. Syl. pt. 4, *Banker v. Banker,* 196 W.Va. 535, 474 S.E.2d 465 (1996).

The plaintiff contends that she was inhibited from effectively prosecuting her divorce, because she had to rely upon the free legal services of Appalachian Research and Defense Fund (ARDF). Although plaintiff's legal services were provided at no cost to her, she contends that she nevertheless should have been awarded attorney's fees. The defendant counters by arguing that it is because plaintiff received free legal services that an award of attorney's fees is inappropriate. The issue presented is whether attorney's fees may be awarded in a divorce proceeding to a party who received free legal representation from a nonprofit legal organization. The issue presented appears to be one of first impression to this Court.

As an initial matter we note that, where statutes authorize recovery of attorney's fees in general, courts have permitted the prevailing party who received legal aid services or other pro bono legal representation to recover attorney's fees [11]. Courts have justified awarding attorney's fees in the pro bono context on the basis that " 'an award of attorney's fees to the organization providing free legal services indirectly serves the same purpose as an award directly to a fee paying litigant' by encouraging the protection of the indigent litigant's rights." *Atamanuk,* 82 Misc.2d at 1061, 368 N.Y.S.2d at 736. (Citation omitted.) Additionally such an award does not represent a windfall to the prevailing litigant, because "fees allowed are to reimburse and compensate for legal services rendered and will not go to the litigants[.]" *Miller,* 426 F.2d at 539.

While there is judicial authority to support awarding attorney's fees, as a general matter, to a litigant receiving legal aid services, there appears to be a dearth of such authority on the specific issue of attorney's fees to a divorce litigant who received legal aid services. At least one commentator supports such an award. *See* McLaughlin, *The Recovery of Attorney's Fees,* at 778 ("As a practical matter, legal services attorneys will rarely be able to recover counsel fees in matrimonial actions since both the husband and wife are usually indigent. In a case where the husband is able to pay and a divorce ... is granted the wife, attorney's fees should be recovered.").

In turning to the case *sub judice* we note that ARDF filed the divorce complaint in this matter, as counsel for the plaintiff, and has prosecuted this appeal on behalf of the plaintiff. While the plaintiff contends that she could not effectively prosecute this divorce because of her reliance on the free services of ARDF, we disagree. The record in this case delineates effective representation by ARDF below and in this appeal.

The award of attorney's fees in divorce proceedings is authorized by W.Va. Code § 48–2–13(a)(6)(A) (1993).[12] *See* Syl.

**11.** *See e.g., Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Martin v. Heckler,* 773 F.2d 1145 (11th Cir.1985); *Cornella v. Schweiker,* 728 F.2d 978 (8th Cir.1984); *Perez v. Rodriguez Bou,* 575 F.2d 21 (1st Cir.1978); *Miller v. Amusement Enterprises,* 426 F.2d 534 (5th Cir.1970); *Brandenburger v. Thompson,* 494 F.2d 885 (9th Cir.1974); *Lea v. Cone Mills Corp.,* 438 F.2d 86 (4th Cir.1971); *Alexander S. v. Boyd,* 929 F.Supp. 925 (D.C.S.C.1995); *Darmetko v. Boston Housing Authority,* 378 Mass. 758, 393 N.E.2d 395 (1979); *Gregory v. Sauser,* 574 P.2d 445 (Alaska 1978); *Winters v. Security Pac. Nat'l Bank,* 49 Cal.App.3d 510, 122 Cal.Rptr. 619 (1975); *Atamanuk v. Kwok Yuin Wong,* 82 Misc.2d 1059, 368 N.Y.S.2d 733 (1975). *See also* Gerald T. McLaughlin, *The Recovery of Attorney's Fees: A Method of Financing Legal Services,* 40 Fordham L.Rev. 761 (1972); Note, *Awards of Attorney's Fees to Legal Aid Offices,* 87 Harv. L.Rev. 411 (1973).

**12.** W.Va.Code § 48–2–13(a)(6)(A) provides:

(6)(A) The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court. The question of whether or not a party is entitled to temporary alimony is not decisive of

Pt. 14, *Bettinger v. Bettinger*, 183 W.Va. 528, 396 S.E.2d 709 (1990) ("The purpose of W.Va. Code, 48–2–13(a)[ (6)(A) ] (19[93] ), is to enable a spouse who does not have financial resources to obtain reimbursement for costs and attorney's fees during the course of the litigation."). In our review of this statute we have not discerned an intent, express or implied, by the legislature that attorney's fees are not to be awarded to a party receiving free legal services. All "that is required is the existence of a relationship of attorney and client[.]" *Miller*, 426 F.2d at 538. No authority has been brought to this Court's attention that would deny attorney's fees in a divorce proceeding on the basis of free legal representation. We hold, therefore, that attorney's fees in a divorce proceeding may be awarded to a party who received free legal aid services or pro bono legal representation; however, such an award is to compensate and reimburse for legal services rendered and shall not be paid to the litigant.

■ In the instant proceeding, the record does not disclose to this Court the basis for the denial of attorney's fees to the plaintiff. We are not certain if the free representation

by ARDF formed the basis of the court's decision. It was incumbent upon the recommended order of the family law master and the final order of the circuit court to set out their findings on the issue of plaintiff's request for attorney's fees. This Court pointed out in *Donna Kaye M. v. Justin Elliot M.*, 197 W.Va. 264, 268, 475 S.E.2d 356, 360 (1996), that "[t]he ability to conduct appellate review ... is dependent upon the quality of the record presented by the parties." Appellate review on the matter of attorney's fees to plaintiff has been effectively precluded because of the insufficiency of the orders by the lower tribunals on this issue.[13] We therefore reverse and remand this issue for proper findings.

## III.

## CONCLUSION

Based upon the foregoing the final order of the circuit court is affirmed in part, reversed in part and remanded for a determination consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

---

that party's right to a reasonable allowance of attorney's fees and court costs. An order for temporary relief awarding attorney fees and court costs may be modified at any time during the pendency of the action, as the exigencies of the case or equity and justice may require, including, but not limited to, a modification which would require full or partial repayment of fees and costs by a party to the action to whom or on whose behalf payment of such fees and costs was previously ordered. If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal.

13. The plaintiff's other assignments of error are without merit.

*Nissan Maxima*

The plaintiff argues that the circuit court erred in awarding the defendant a 1990 Nissan Maxima and giving her a 1988 Pontiac Sunbird. The record indicates the Nissan had an appraised value of $12,000, and the Pontiac had a value of $3,500. The Pontiac was paid off, but a debt of $10,000 still existed on the Nissan. The net effect of this situation appears to be that the plaintiff received $1,500 more than the defendant.

*Division Of Goods And Furnishings*

The brief of the plaintiff contends that after the division of the household goods and furnishings, "she is left without necessary furnishings to even

make a meal." The record indicates that the circuit court divided all cookware. Our review of the circuit court's order does not disclose any inequitable treatment in the division of household goods and furnishings.

*Awarding Defendant Marital Home*

The circuit court's order indicates that the marital home was awarded to the defendant. The defendant was ordered to pay the plaintiff one half the appraised value of the home. The home was appraised at $68,000. The defendant therefore was ordered to pay the plaintiff $34,000. The plaintiff argues that the circuit court should have awarded the marital home to her. That is, the plaintiff contends that she should have the home and that she should not be required to compensate the defendant as the defendant was ordered to compensate her. The plaintiff offers no justification for her position. The record in this case indicates that the home originally belonged to the defendant's parents, and that upon their deaths he acquired the home by will. It is also indicated in the record that the defendant lived in the home as a youth. The defendant contends that it was because of his family ties to the home that the family law master recommended he keep the residence, but pay to plaintiff one half its value. We find no basis to disturb the circuit court's ruling on this issue.

WORKMAN, Chief Justice, dissenting:

I must respectfully dissent from the majority's decision. The Defendant in this case failed to file a cross-appeal regarding the issue of alimony; yet the majority remands the case back to the circuit court to address an issue not only not raised in the petition for appeal in this Court, but in fact not even raised below. In so doing, the majority violates our long-established rule of deciding cases based on the record before us. By remanding this case based solely on *allegations* of a change in circumstance made for the *first time* in Defendant's brief, and thereby providing Appellant an opportunity to revisit the issue of alimony on remand, the majority has acted in complete disregard of established modification procedures. If Appellee wished to seek a reduction of the alimony award based on the fact that the wife's employment subsequent to the proceedings below constituted an unanticipated change of circumstances, the proper procedure would be to follow the procedures set forth in West Virginia Code § 48–2–15(e) (1996) and file a petition for modification. In this case, upon bare allegations made for the first time on appeal, the majority sets the stage for an alteration of Plaintiff's alimony award. While I am not suggesting that Plaintiff's income be disregarded, it is not for this Court to short-circuit the legislatively-established procedures for addressing issues of modification.

The precedent relied upon by the majority to grant a remand on the issue of alimony is *Hinerman v. Hinerman,* 194 W.Va. 256, 460 S.E.2d 71 (1995). In that decision, a remand was already determined to be warranted on the issue of rehabilitative versus permanent alimony because of the circuit court's failure to properly consider the factors set forth in syllabus point three of *Molnar v. Molnar,* 173 W.Va. 200, 314 S.E.2d 73 (1984). After stating that a remand was in order, this Court in *Hinerman* referenced the need to develop below the assertion of the ex-wife's employment. 194 W.Va. at 261, 460 S.E.2d at 76. We did not, however, premise the remand of that decision on the issue of the ex-wife's alleged newfound employment. Moreover, the statement in *Hinerman* that

this issue should be developed below did not excuse the ex-husband in that case from the statutory requirement of first filing a motion to modify the prior award of alimony pursuant to West Virginia Code § 48–2–15(e). The majority now uses what was at best dicta, the mention that an allegation of a change of circumstances could be considered on remand (since it was being remanded for other reasons), and essentially invites all domestic litigants to assert changes of circumstances on appeal. All things both good and bad must have a beginning and an ending, but this policy suggests that domestic matters may never be ripe for appellate review so long as one party alleges (albeit for the first time on appeal) a change of circumstances.

Given the lack of any procedural challenge by Appellant, the majority was wrong to remand, thus permitting Defendant an opportunity to relitigate the issue of alimony based solely on an ex parte representation. Characterizing mere representations in a party's appeal brief as "[t]he record on appeal," the majority fallaciously reaches its conclusion that the circuit court's findings of fact were "clearly erroneous." Contrary to the majority's characterization, representations in an appellate brief do *not* constitute a part of the record on appeal. *See Wilkinson v. Bowser,* 199 W.Va. 92, 483 S.E.2d 92 (1996). One can only imagine the devastating effects on the appellate process if this Court were to accord evidentiary weight to unsupported and unproven allegations made for the first time in appellate briefs. In this case, the well-established review process for domestic decisions has been annihilated by the majority's reliance on the Defendant's mere representations.

\*   \*   \*

Although the majority reaches the conclusion that a mutual restraining order was wrongly issued by the circuit court pursuant to West Virginia Code § 48–2–15(b)(9) (1996) based on the absence of a finding of abuse, such an order was temporarily in place during the pendency of the proceedings below generally. The restraining order may be of no great moment to the instant case now, but it is an important enough issue in the larger

domestic violence arena that I take this opportunity to address it. Mutual restraining orders are a common but very bad practice. On first glance, they seem harmless, and perhaps even effective in dealing with allegations of domestic violence. Whereas the language of West Virginia Code § 48–2–15(b)(9) requires enjoinment of "the offending party," all too often magistrates are issuing mutual restraining orders without regard to the evidence. That practice is generally harmful and ineffective.

The first requirement for issuance of a family violence protective order is *evidence* of abuse. Although the language of West Virginia Code § 48–2–15(b)(9) requires enjoining of "the offending party," all too often magistrates, family law masters, and circuit judges are issuing mutual restraining orders without a proper evidentiary foundation. This practice of mutual restraining orders, while perhaps well-intentioned, causes more problems than it attempts to solve. It hinders rather than assists the enforcement of domestic violence laws. Judicial officers may believe they are addressing the issue of family violence, but mutual restraining orders can actually endanger, rather than protect, the victim. Boilerplate mutual restraining orders also diminish the principal goal of a restraining order, which is to provide protection from domestic violence to one who has been subjected to it. When a law enforcement officer at the scene of domestic violence learns of mutual restraining orders, confusion obviously results, and the officer often resolves the dilemma by arresting both. This confusion was never intended by our Legislature.

Mutual restraining orders should not be issued except upon petition and only upon a specific finding of abuse by the restrained party. West Virginia law prohibits the issuance of restraining orders without the filing of a petition by a victim and evidence supporting that petition: Mutual protective orders should not be granted unless both parties have filed a petition under section four [W. Va.Code § 48–2A–4] of this article and have proven the allegations of abuse by a preponderance of the evidence. W. Va.Code § 48–2A–6(e).

The issuance of a restraining order without a petition and supporting evidence trivializes the complaint of the individual who has filed such a petition and has provided evidence in support thereof. According to the Model Code on Domestic and Family Violence, published by the National Council of Juvenile and Family Court Judges, "A court shall not grant a mutual order for protection to opposing parties." Sec. 310, at 30. An overview to chapter 3 of the Model Code outlines the problems:

> Mutual orders undermine the safeguards contemplated by civil protection order statutes. Mutual orders minimize a perpetrator's exposure to sanctions for violation of an order. Mutual orders rarely provide comprehensive relief to safeguard the victim. The diluted and mixed messages of mutual orders result in unpredictable police response. Often police refuse to enforce mutual orders. When a mutual order is violated, law enforcement officers have no way to determine who needs to be arrested and may arrest both parties, further victimizing the real victim. The consequences of arrest for victims who have committed no violence or criminal act, but who are bound by a mutual order are profound; victims may suffer a loss of good reputation, lose custody of children, find employment endangered, require burdensome fees for defense counsel and be unable to make bail.

The commentary on section 310 of the Model Code explains further:

> The Model Code explicitly prohibits the issuance of mutual protection orders. Mutual orders create due process problems as they are issued without prior notice, written application, or finding of good cause. Mutual orders are difficult for law enforcement officers to enforce, and ineffective in preventing further abuse. However, the Code does not preclude the issuance of separate orders for protection restraining each opposing party where each party has properly filed and served petitions for protection orders, each party has committed domestic or family violence as defined by the Code, each poses a continuing risk of violence to the other, each has otherwise satisfied all prerequisites for the type of order and remedies sought, and each has

complied with the provisions of this chapter.

Model Code at 30 (cmt. to Sec. 310).

In addressing requests for restraining orders, courts should make explicit findings of fact regarding violent conduct and only such findings as are supported by the evidence. Where separate orders for protection are awarded, the relief contained in each should be tailored individually to address the risk and prevent the abusive conduct of the other, and each order should be constructed in a manner so as not to jeopardize the safety requirements that the evidence demonstrates exists.

Unjustified mutual restraining orders denigrate the very purpose of domestic violence restraining orders. It is vital that the judicial system treat domestic violence as a serious problem, and that we work to create a system more responsive to those who seek protection.