550 S.E.2d 377

**Nancy S. FRANKEL, Plaintiff/Petitioner Below, Appellant,**

v.

**Andrew Howard FRANKEL, Defendant/Respondent Below, Appellee.**

No. 28406.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 10, 2001.

Decided May 3, 2001.

Dissenting Opinion of Justice Starcher July 24, 2001.

Dissenting Opinion of Chief Justice McGraw July 25, 2001.

Luke A. Lafferre, Tracy D. Frye, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Appellant.

George A. Stolze, Huntington, for Appellee.

PER CURIAM.

This case is before this Court upon appeal of a final order of the Circuit Court of Cabell County entered on December 10, 1999. In this appeal, the appellant and plaintiff below, Nancy S. Frankel, contends that the circuit court erred by adopting a recommendation of the family law master awarding custody of her son, William Lloyd Frankel, to his father, Andrew Howard Frankel, the appellee and defendant below.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the final order of the circuit court is affirmed.

## I.

Nancy and Andrew Frankel were divorced on May 29, 1992, in the District Court of Dallas County, Texas. Pursuant to the agreed divorce decree, the parties were granted joint custody of their two children, William, born May 23, 1988, and Jessica, born October 7, 1986. It was further agreed that Ms. Frankel was to have primary physical custody of the children with the right to determine their domicile. Accordingly, since 1992, Ms. Frankel and her two children have resided in Huntington, West Virginia.

On October 13, 1998, Mr. Frankel filed a motion to modify custody in the District Court of Dallas County, Texas. According to Ms. Frankel, she was financially unable to obtain legal representation in Texas, and as a result, the Texas court entered a default judgment against her. Thereafter, Ms. Frankel filed a petition in the Circuit Court of Cabell County, West Virginia, seeking sole custody of her children. Mr. Frankel responded by filing a motion to dismiss, contesting the jurisdiction of the court. Ultimately, the circuit court ruled that West Virginia was the "home state" under the

Uniform Child Custody Jurisdiction Act, W.Va.Code § 48–10–1 to –26 (1981).

In the meantime, the children flew to Texas on March 27, 1999, to spend their spring break from school with their father. The children were scheduled to return to West Virginia on April 4, 1999. However, without notice to Ms. Frankel or the circuit court, Mr. Frankel kept the children in Texas and enrolled them in a private school in Dallas. The children remained in Texas until May 27, 1999.

After the children were returned to West Virginia, Mr. Frankel abandoned his efforts to obtain custody of the children through the Texas court and filed his own petition for custody in the Circuit Court of Cabell County.[1] A custody hearing was held before a family law master in August 1999. The education of the children was the primary focus of the hearing with Mr. Frankel contending that his children should attend the Shelton School, a private school in Dallas, Texas, which can address the children's learning disabilities. Both William and Jessica suffer from dyslexia and dysgraphia. William has more severe problems including apraxia, a condition which causes impairment of the ability to execute coordinated movements and speech.

During the hearing, the family law master interviewed the children and both indicated a desire to continue to live with their mother in West Virginia. In addition, several experts testified regarding the children's educational needs. At the end of the hearing, the family law master found that although William tested in the high average range of intelligence, he was having difficulty mastering language skills. The family law master concluded that William could not acquire appropriate language skills if he remained in the West Virginia public school system. Accordingly, he recommended that Mr. Frankel be granted custody of William so that he could attend the Shelton School in Dallas. The family law master further recommended that Jessica remain with her mother in West Virginia. Both parties filed petitions for review with

the Circuit Court of Cabell County. After hearing argument on the matter, the circuit court adopted the family law master's recommendation in the final order entered on December 10, 1999. This appeal followed.

## II.

On several occasions, this Court has stated that:

"In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review. Syl. Pt. 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995)."

Syllabus Point 1, *Price v. Price,* 205 W.Va. 252, 517 S.E.2d 485 (1999). This Court has also stated that: " 'Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused.' Syl., *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977)." Syllabus Point 4, *Pearson v. Pearson,* 200 W.Va. 139, 488 S.E.2d 414 (1997). With regard to a modification of custody, this Court held in Syllabus Point 2 of *Cloud v. Cloud,* 161 W.Va. 45, 239 S.E.2d 669 (1977), that "[t]o justify a change of child custody, in addition to a change in circumstances of the parties, it must be shown that such change would materially promote the welfare of the child."

Ms. Frankel contends that the family law master erroneously relied upon the number of experts who testified that it was in William's best interests to attend school in Texas. She maintains that it is in William's best interests to remain in her custody as she has always been his primary caretaker. In

1. The Texas default judgment was vacated on appeal after Mr. Frankel agreed that the Texas court did not have jurisdiction to enter an order affecting child custody because West Virginia is the "home state" of the children.

addition, she asserts that William should have the right of continued association with his sister. Finally, Ms. Frankel argues that the West Virginia public school system can satisfy William's educational needs.

By contrast, Mr. Frankel claims that the evidence shows that the public schools in West Virginia cannot educate William. He states that the family law master did not rely upon the number of experts who testified, but instead considered all of the testimony and correctly concluded that it was in William's best interests to attend school in Texas. We agree.

After examining the record, we do not find that the circuit court abused its discretion by adopting the family law master's recommendation and ordering that William be placed in his father's custody. It is undisputed that William suffers from neurological deficits which create multiple learning problems for him. The evidence in the record shows that William's learning disabilities are not being remediated in the public school system. This is evident not only from the testimony of the witnesses at the custody hearing, but also from the numerous records filed in this case which document William's lack of progress in school. Although William is now in the sixth grade, he is only able to read at the kindergarten level. His test scores have consistently been in the bottom quartile of those children tested in his age group even though he has a high average range of intelligence.

■ This Court is certainly mindful of William's desire to continue to reside in West Virginia with his mother. Likewise, we have recognized the importance of keeping siblings together. *See State ex rel. Treadway v. McCoy*, 189 W.Va. 210, 429 S.E.2d 492 (1993). However, "in visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syllabus Point 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996). In this case, it is in William's best interests to be placed in his father's custody so that he can attend the Shelton School in Dallas.

The evidence clearly indicates that William needs full-time remediation in order to acquire appropriate language skills and overcome or at least manage his learning disabilities so that he can become a successful adult. Unfortunately, William is not receiving the education he needs in the public school system. It is clear that William can only achieve his full potential by attending a school which specializes in educating children with learning disabilities. There are no such schools in the vicinity of Cabell County or within this State. By living with his father, however, William can attend the Shelton School in Dallas, Texas, and receive the remediation that he needs. Therefore, the circuit court did not abuse its discretion by adopting the family law master's recommendation awarding custody of William to Mr. Frankel so that he can attend the Shelton School.

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Cabell County entered on December 10, 1999, is affirmed.

Affirmed.

STARCHER, Justice, dissenting.

(Filed July 24, 2001)

I dissent to a decision that wrests a young child, against his will, away from a fit and loving primary caretaker parent—on the unbelievable grounds that the West Virginia public school system is incapable as a matter of law of providing sufficient remedial schooling for the child's learning disability.

The majority opinion concludes that William can "only reach his full potential" if he is in the custody of the parent—a Texas resident—who has enough money to pay for him to reach that "potential." This is the first time that I have heard of a "full potential" rule as the legal test for child custody.

The appellant asserts that the appellee father has never offered a cent to help pay for remedial schooling for his son William in West Virginia. The appellee does not point to any facts to dispute this assertion. I do not understand why the majority ignores this issue.

It is sad that these parents could not resolve their dispute without litigation. But the rule of law is *not* that the parent who has the money to buy the "best care" for a child

gets custody—yet that is the rule that the majority is *de facto* applying.

I strongly disagree with a child custody decision that is premised on the purported inability of our state's school system to provide acceptable schooling for a handicapped child. The solution to that condition, if it exists (I doubt it), is to fix the schooling—not to ship our children away.

Accordingly, I would reverse the circuit court and remand with directions that custody be returned to the child's mother; that she be required to arrange for special tutoring; and that the father be required to pay his share of the cost of the tutoring.

McGRAW, Chief Justice, dissenting.
(Filed July 25, 2001)

I find it perplexing that this Court can uphold a finding that there are no resources in Cabell County sufficient to permit William Frankel to overcome his learning disabilities, given the glaring fact that such county is home to Marshall University and its College of Education and Human Services. In effect, the Court has determined that West Virginia cannot provide an adequate education for William, but that Texas can. I find nothing in the record dictating such a drastic conclusion.

The public school system is legally obligated to provide the necessary special education services that William requires,[1] and it is patently obvious that such services are available in Cabell County. The proper remedy, if necessary, would be to mandate that the board of education provide William with an adequate education in light of his disabilities. Instead of adopting such a sensible approach to ensuring that the child's needs are met, the Court in this case has taken the simplistic path of awarding custody to the parent with the greater financial resources. I do not think that the Court fully realizes the mischief that such a result will work in the future, and I respectfully dissent.

---

1. *See* Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1491; Education of Exceptional Children Act, W. Va.Code §§ 18–20–1 to – 9.