IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2015 Term

_____

No. 14-0042

_____

**FILED**

**May 13, 2015**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

DAVID J. RIFFLE,
Petitioner Below, Petitioner

v.

SHIRLEY I. RIFFLE (now MILLER),
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Harrison County,
Honorable James A. Matish
Civil Action No. 12-D-459-5

AFFIRMED

_____

Submitted: March 11, 2015
Filed: May 13, 2015

Jerry Blair, Esq.                           Shirley I. Miller
Clarksburg, West Virginia                   *Pro Se*
Counsel for Petitioner

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syllabus, *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

2. Pursuant to the provisions of West Virginia Code § 48-27-507 (2014), a court is prohibited from entering a mutual protective order unless each party has filed a petition asserting allegations of domestic violence against the other and established those allegations by a preponderance of the evidence.

LOUGHRY, Justice:

The petitioner, David J. Riffle, appeals from the October 30, 2013, order of the Circuit Court of Harrison County, through which the circuit court reversed the February 13, 2013, order of the Family Court of Harrison County with regard to the inclusion of a mutual restraining order within the agreed final decree of divorce. The circuit court found that the record was devoid of a proper evidentiary showing of abuse to support the issuance of a mutual restraining order. As grounds for his appeal, Mr. Riffle argues that the circuit court violated his right to enter into a contractual agreement. Maintaining that the parties concurred that the entry of a joint restraining order was in their best interests, the petitioner asserts that the trial court abused its discretion in setting aside the restraining order. In responding, Ms. Miller disputes that a need for the restraining order was demonstrated to the family court. She further disavows having agreed to the entry of an order directed at governing the respective conduct of each of the parties.[1] Upon careful review of the applicable statutes in conjunction with the record of this case,[2] we find that the trial court did not commit error. Accordingly, the decision of the circuit court is affirmed.

---

[1]*See infra* note 10.

[2]We wish to acknowledge the amicus curiae brief submitted, in response to the Court's invitation, by the West Virginia University College of Law Clinical Law Program and the joint amicus curiae brief submitted by Legal Aid of West Virginia and the West Virginia Coalition Against Domestic Violence.

1

## I. Factual and Procedural Background

The parties were married on December 30, 1988, and subsequently separated on August 10, 2012. That same month, the petitioner filed a complaint against the respondent seeking a divorce. He later filed a petition against the respondent requesting protection from domestic violence, which resulted in the entry of an emergency protective order.[3] Due to the temporary agreement reached by the parties as to both the underlying divorce action and the domestic violence petition, the protective order was terminated by entry of an order on October 22, 2012.[4] Through this ruling, the family court dismissed the pending domestic violence case and issued a mutual no contact order, which directed both parties to refrain from contacting or otherwise communicating with the opposing party other than as necessary for the court proceedings.

By entry of an order on February 19, 2013, the parties were divorced pursuant to an agreed final order of divorce. Included in the agreement, is the following proviso:

> A mutual restraining order is entered in this matter such that neither party may have any direct or indirect contact with the other party, nor may either party interfere with the other party's quiet enjoyment of their life, and the willful failure to abide by this ORDERED provision shall subject the violating party to contumacious contempt of this Court.

---

[3]This order was entered by the family court on August 20, 2012.

[4]In this order, the family court found that the petitioner had voluntarily dismissed the domestic violence petition.

2

In May 2013, the petitioner sought to have Ms. Miller declared to be in contempt of court with regard to the provisions of the mutual restraining order. He asserted that Ms. MiIler left a message on his answering machine on one occasion.[5] In addition, the petitioner avowed that Ms. Miller contacted a long-time friend of his, as well as his pastor, and requested that both of these individuals contact Mr. Riffle on her behalf.[6]

Following a hearing on August 6, 2013, the family court found Ms. Miller in contempt of court with regard to her attempts at contacting the petitioner.[7] Through its order, the family court permitted Ms. Miller to purge herself of the contempt ruling by refraining from any direct or indirect contact with the petitioner during the next two years.

On September 3, 2013, Ms. Miller filed a pro se petition for appeal, purportedly seeking to challenge the contempt ruling as well as the inclusion of a mutual restraining order in the final order of divorce.[8] On September 27, 2013, the circuit court

[5]According to the petition, the subject of the message was Ms. Miller's feelings toward the petitioner, including the fact that she missed him.

[6]While the petitioner asserted additional facts in his petition seeking contempt, those allegations are not relevant to the issue of the mutual restraining order as they concern the resolution of the sale and distribution of marital property.

[7]The contempt ruling, entered on August 27, 2013, also addressed Ms. Miller's act of contacting a realtor other than the individual previously selected by the petitioner.

[8]The pro se filing by Ms. Miller is admittedly imprecise in that it purports to be an
(continued...)

3

held a hearing on the respondent's amended petition for appeal. Through its ruling entered on October 30, 2013, the circuit court affirmed the entry of the nunc pro tunc order[9] but reversed the family court's issuance of a mutual restraining order through the final decree of divorce. It is the circuit court's decision to dissolve the mutual restraining order that the petitioner now appeals.

## II. Standard of Review

Our review of this matter is governed by the standard we adopted in the syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004):

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Bearing this standard in mind, we proceed to determine whether the trial court committed error in setting aside the mutual restraining order.

---

[8](...continued)
appeal of the *nunc pro tunc* order that was entered on the same date as the contempt ruling. That ruling did nothing other than to correct a typographical error pertaining to which party was charged with the responsibility of placing the former marital home on the market.

[9]*See supra* note 8.

### III.  Discussion

The regular practice of inserting language in domestic relations orders aimed at restricting the conduct of each party towards the other is at the center of this appeal.[10] While the need for specific directives aimed at protecting individuals is not itself in question, the issuance of mutual protective orders is clearly governed by statute. *See* W.Va. Code § 48-27-507 (2014).  This case involves the issuance of an order outside the requirements of West Virginia Code § 48-27-507, a statute aimed at *jointly* restricting the conduct of the parties in the aftermath of *proven* allegations of domestic violence.  In recognition of the existing tension between the practices employed by the family court judges and the statutes that address domestic violence,[11] we examine the interplay between the governing statutes

---

[10]The circuit court noted in its ruling that the family court judge "stated in the final hearing on Mr. Riffle's divorce petition . . . that 'neither party has requested a restraining order against the other, although there will be language in the decree that mutually orders them to stay away from one another.'"

[11]During the pendency of this litigation, legislation aimed at addressing these issues was considered by our Legislature.  Senate Bill 430, which passed on March 13, 2015, and took immediate effect, affirmed the provisions of West Virginia Code § 48-27-507 with regard to the continuing need for joint allegations *and* proof of domestic violence prior to entering a mutual protective order.  Through that same bill, in legislation codified as West Virginia Code § 51-2A-2a, family courts may enter orders that restrict the parties from having contact with each other absent findings of domestic violence.  Under the new statute, the contemplated orders may address "the conduct expected of the parties *during the proceeding*;" however, the Legislature directed that these restrictions "*shall remain in effect for a period of time as specified in the order.*"  *Id.* (emphasis supplied).  The orders authorized by each statute address specific types of  conduct; the Legislature clarified that orders entered pursuant to West Virginia Code § 51-2A-2a "restrict behavior which is not of sufficient severity to implicate the provisions of article twenty-seven, chapter forty-eight of this code and 18 U.S.C. § 922(g)(8)."  W.Va. Code § 51-2A-2a (f).

and the recognized need to assist the family court with legitimate concerns rooted in the potential for hostility and volatility.

As the amici both observe, the terms "protective" and "restraining" are often used interchangeably in this area.[12]  In this case, the family court judge imposed a "mutual restraining order"[13] to limit contact between the parties.  To resolve whether the circuit court correctly ruled that the family court's issuance of a mutual restraining order under the facts of this case was improper, we turn to our statutes to identify the requisites for issuing relief in the form of a protective or restraining order.  As a starting point, we examine the availability of protective relief outside the provisions of this state's Prevention of Domestic Violence Act, W.Va. Code §§ 48-27-501 to -510 (2014) ("article twenty-seven").

---

[12]One of the two amici posits that protective orders, as compared to restraining orders, "are more limited in terms of the serious behaviors they address, whom they can be issued against, . . . the behaviors that they prohibit and how violators may be punished."  The other amicus represents that "there is no inherent conceptual distinction between the terms . . . 'restraining orders' or 'protective orders,' all of which are used almost interchangeably in cases and statutes."

[13]While unnecessary for purposes of addressing the concerns presented in this matter, we do note that one of the amici suggested the use of terminology that may prove useful in the future.  In those matters that clearly arise under West Virginia Code § 48-27-507 because of the allegations and proof of domestic violence, those orders could be referred to as "Article 27 protection orders."  For those matters that are less serious and present the "garden variety" need to limit contact between the parties, those orders could be labeled as "non-DV conflict prevention orders."  What appears critical to this Court is the need to clearly demarcate those orders which arise under and necessarily invoke the requirements of West Virginia Code § 48-27-507, and those that do not.

6

Independent of the statutory criteria for issuing protective orders provided in article twenty-seven, the Legislature granted courts the authority to issue both temporary and permanent relief to interdict abuse, harassment, interference with visitation rights, or other restraints on a party's personal liberties. In providing for both injunctive relief and protective orders in the course of divorce proceedings, the Legislature directed that such relief may be ordered "whether or not there are grounds for relief under subsection (c) [referencing chapter 48, article 27] and whether or not an order is entered pursuant to such subsection." W.Va. Code § 48-5-608(a) (2014).[14] By its language, section 608(a) addresses relief aimed at a singular "offending party" and that relief is proper only upon proof of the "allegations of abuse."[15] *Id.*

Turning to article twenty-seven, which addresses the prevention of domestic violence, we note initially that the acts which qualify as "domestic violence" or "abuse" are statutorily specified as distinct from the abuse or harassment contemplated by West Virginia

---

[14]Note that the extent of the relief available in the non-domestic violence cases is more limited. For example, there is no restriction regarding the possession of firearms (*cf.* W.Va. Code § 48-27-502(b)). In contrast to article twenty-seven relief, violations of West Virginia Code § 48-5-608(a) do not carry the imposition of a criminal sanction. *See* W.Va. Code § 48-27-502(e). Additionally, in clear contrast to article twenty-seven protective orders, an article five, section 608(a) protective order is not entered on the domestic violence registry.

[15]West Virginia Code § 48-5-608(a) does not provide the necessary authority for the issuance of the mutual restraining order in this case.

7

Code § 48-5-608.[16]  By definition, those acts subject to relief under article twenty-seven

involve the following conduct:

> (1) Attempting to cause or intentionally, knowingly or recklessly causing physical harm to another with or without dangerous or deadly weapons;
> (2) Placing another in reasonable apprehension of physical harm;
> (3) Creating fear of physical harm by harassment, stalking, psychological abuse or threatening acts;
> (4) Committing either sexual assault or sexual abuse as those terms are defined in article eight-b [§§ 61-8B-1 et seq.] and eight-d [§§ 61-8D-1 et seq.], chapter sixty-one of this code; and
> (5) Holding, confining, detaining or abducting another person against that person's will.

W.Va. Code § 48-27-202 (2014).

Under article twenty-seven, the Legislature has expressly directed that mutual

protective orders are prohibited "unless both parties have filed a petition under part 3 [§§

48-27-301 et seq.] of this article and have proven the allegations of domestic violence by a

preponderance of the evidence."  W.Va. Code § 48-27-507.  That section further provides

that singularly-aimed protective orders are authorized under article twenty-seven.  *See id.*

A separate protective order must be filed for each petition when relief is awarded.  *Id.*

---

[16]The conduct contemplated by West Virginia Code § 48-5-608(a) is molesting or interfering with the other party; restraining a party's personal liberty; interring with custodial or visitation rights; molesting or harassing a party at school, business, or place of employment; entering the party's home environs; and phone or verbal harassment.

As the basis for its dissolution of the mutual restraining order awarded by the family court, the circuit court looked to the provisions of West Virginia Code § 48-27-507. The circuit court reasoned that "allegations of abuse have not been proven by either party by a preponderance of the evidence." Opining further, the circuit court stated:

> The record merely provides allegations of non-abusive contact by Ms. Miller such as a voice mail message to Mr. Riffle and attempted contact through a mutual colleague. Such conduct does not rise to the level of abuse so as to justify the issuance of a restraining order. As such, a proper evidentiary showing of abuse has not been sufficiently made to support the issuance of a mutual restraining order.

Relying on the language of West Virginia Code § 48-27-507, the trial court concluded that the record of this matter did not meet the statutory criteria. We agree.

Echoing the dissent authored by Justice Workman in *Pearson v. Pearson*, 200 W.Va. 139, 488 S.E.2d 414 (1997), the circuit court observed that "mutual protective orders are disfavored." Commenting that "[m]utual restraining orders are a common but very bad practice," Justice Workman expounded on the perils of issuing mutual restraining orders "without a proper evidentiary foundation:"

> This practice of mutual restraining orders, while perhaps well-intentioned, causes more problems than it attempts to solve. It hinders rather than assists the enforcement of domestic violence laws. Judicial officers may believe they are addressing the issue of family violence, but mutual restraining orders can actually endanger, rather than protect, the victim. Boilerplate mutual restraining orders also diminish the principal goal of a restraining order, which is to provide protection from domestic

9

> violence to one who has been subjected to it. When a law enforcement officer at the scene of domestic violence learns of mutual restraining orders, confusion obviously results, and the officer often resolves the dilemma by arresting both. This confusion was never intended by our Legislature.

*Id.* at 153, 488 S.E.2d at 428 (Workman, Chief Justice, dissenting).

The concerns articulated in the *Pearson* dissent have gone unheeded as family courts continue to include this boilerplate mutual restraining language in divorce decrees– even when the language has not been specifically requested.[17] In addition to the unwelcome neutralizing effect on law enforcement,[18] the amici have called to our attention that, with the enactment of federal laws directed at preventing domestic violence, there are compliance-related concerns that arise when a mutual restraining order is improperly issued.[19] Our state

---

[17]*See supra* note 10.

[18]As noted in *Pearson*, police officers may refuse to enforce mutual orders when they arrive at the scene of a domestic dispute and learn that the orders are directed at each of the parties. 200 W.Va. at 153, 488 S.E.2d at 428 (Workman, Chief Justice, dissenting). Because "[l]aw enforcement authorities do not take mutual orders as seriously as orders directed against a single offender," the amici further observe that such orders "can become an instrument of control through which the offending party can continue to dominate the true victim."

[19]The amici represent that "permitting mutual orders to be entered in cases involving domestic violence may jeopardize literally millions of dollars of federal funding under the Violence Against Women Act currently being received by police, prosecutors, court systems, and others in West Virginia." *See* 42 U.S.C. § 3796hh (2012). Eligibility for these federal funds requires proof that mutual restraining orders are only issued where both parties file a claim and the court makes detailed findings of fact that both parties acted as aggressors. *See* 42 U.S.C. § 3796hh(c)(1)(C).

laws require that orders issued pursuant to article twenty-seven must prohibit the affected parties from possessing any firearms. *See* W.Va. Code § 48-27-502 (2014). In addition, protective orders issued under article twenty-seven are required to contain language indicating that a violation of such order may result in confinement in a regional jail for up to one year and a fine of as much as $2,000.[20] *See id.*

Mutual protective orders cannot be issued at the whim of the family court without qualifying allegations of domestic violence, or abuse, followed by evidentiary proof of those allegations. Absent those foundational predicates, a mutual protective order may not be issued under authority of West Virginia Code § 48-27-507.[21] As discussed at length in the *Pearson* dissent, and further addressed by the amici in this case, sound reasons exist for limiting the issuance of mutual protective orders to those cases where proper assertions of domestic violence or abuse have been established. Otherwise, the objectives sought by the issuance of such orders are more likely to be undermined than to be achieved. Accordingly, we hold that pursuant to the provisions of West Virginia Code § 48-27-507, a court is prohibited from entering a mutual protective order unless each party has filed a petition asserting allegations of domestic violence against the other and established those

---

[20]There was no language included in the divorce decree that addressed the issues of firearm possession or criminal penalties, as required by West Virginia Code § 48-27-502.

[21]We wholly reject the petitioner's contention that he had a right to enter into a contract that violates the provisions of West Virginia Code § 48-27-507.

allegations by a preponderance of the evidence.[22]  In this case, the trial court properly applied the provisions of West Virginia Code § 48-27-507 to determine that the predicate filings and evidentiary proof required by that statutory section were wholly missing. Accordingly, the circuit court acted within its discretion in setting aside the mutual restraining order issued by the family court.

## IV.  Conclusion

Based on our determination that the circuit court properly dissolved the improperly issued mutual restraining order, the October 30, 2013, order of the Circuit Court of Harrison County is affirmed.

Affirmed.

---

[22]We specifically framed our new point of law in terms of a "mutual protective order" to track the statutory language of article twenty-seven.  This does not mean that the family courts may circumscribe this ruling by continuing to issue "mutual *restraining* orders."  In recently enacting West Virginia Code § 51-2A-2a (*see supra* note 11), the Legislature authorized family courts to "restrict contact between the parties thereto without a finding of domestic violence" and further to "enter a standing order regarding the conduct expected of the parties during the proceeding."  The new statute is clear in stating that "[t]his order shall not be considered a protective order for purposes of section five hundred seven, article twenty-seven, chapter forty-eight of this code."  *Id.*  Those orders are designed to restrict contact between the parties but to do so *outside* the parameters of article twenty-seven acts of domestic violence.  We caution the courts to choose the governing language of their orders carefully, and to specifically refer to the authorizing statutory language pursuant to which the order is being issued.  An order that is aimed at restricting a party's conduct pursuant to West Virginia Code § 51-2A-2a should so specify and should not be casually denominated as a "mutual restraining order."  Instead, it should mirror the authorizing language and indicate that its purpose is to restrict conduct between the parties.  *See id.*

12