IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2017 Term

FILED

June 13, 2017

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 16-0494

YESHIAREG MULUGETA,
Respondent Below, Petitioner

v.

DIMITRI MISAILIDIS,
Petitioner Below, Respondent

Appeal from the Circuit Court of Berkeley County
The Honorable John C. Yoder, Judge
Civil Action No. 14-D-1146

AFFIRMED, IN PART,
REVERSED IN PART, AND REMANDED

Submitted: April 19, 2017
Filed: June 13, 2017

Gregory A. Bailey, Esq.                    Cinda L. Scales, Esq.
Arnold & Bailey, PLLC                      Scales Law Office
Charles Town, West Virginia                Martinsburg, West Virginia
Counsel for Petitioner                     Counsel for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.
CHIEF JUSTICE LOUGHRY concurs in part, dissents in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.    "'In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.' Syl. Pt. 2, *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003)." Syl. Pt. 1, *Conrad v. Conrad*, 216 W.Va. 696, 612 S.E.2d 772 (2005).

2.    "Questions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matter[] will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

3.    "'Equitable distribution . . . is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [former] W.Va. Code, 48-2-32 [now W.Va. Code § 48-7-103].' Syllabus Point 1, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990)." Syl. Pt. 2, *Stuck v. Stuck*, 218 W.Va. 605, 625 S.E.2d 367 (2005).

WORKMAN, Justice:

This divorce action is before the Court upon the appeal of Petitioner Yeshiareg Mulugeta (hereinafter "Wife") from the April 15, 2016, order of the Circuit Court of Berkeley County, West Virginia, which affirmed the final order of the family court. On appeal, Wife contends the court abused its discretion with regard to the permanent spousal support award of $4,000.00 per month. She claims this figure was "grossly inadequate considering the enormous disparity in income" between the parties. Wife also disputes the court's equitable distribution findings, specifically, classification of certain retirement accounts of Respondent Dr. Dimitri Misailidis (hereinafter "Husband") as pre-marital, and classification of certain expenditures he made as marital expenses.

For the reasons set forth below, we affirm the circuit court's order with regard to the equitable distribution findings, with the exception of the finding on Husband's premarital portion of his 401K retirement account; we reverse that finding because the unrefuted evidence showed $249,685.00 of that account was premarital. We also reverse the award of spousal support, and remand this case to the circuit court with directions to enter an order remanding the case to the family court for further proceedings consistent with this opinion.

1

## I.  FACTUAL AND PROCEDURAL HISTORY

Husband and Wife hold medical degrees from a University in Greece. Husband is a principal with Martinsburg Radiology Associates, Inc. Wife has never worked outside the home. They were first married in 1982, and that marriage ended in 1990. Following their first divorce, Husband paid rehabilitative spousal support to Wife for five years, and financed Wife's efforts to obtain her Master's Degree in Public Health from George Washington University. The parties remarried in 2000, and their second marriage lasted fourteen years.

The parties have two adult children, and Husband has an adult child from another relationship. The parties lived comfortably in Martinsburg, West Virginia, on Husband's annual salary of approximately $500,000.00. The parties acquired real estate (the marital residence and three condominiums in Maryland), retirement accounts, automobiles, and incurred little debt.

Economic comfort, however, did not make for a successful marriage. They last lived together on or about August 28, 2014. Wife moved to one of the condominiums the parties owned in Maryland. Husband claims that at the time she moved out, she

advised him that she was doing so to be close to her medical treatment.[1] However, shortly thereafter Wife informed him that she no longer wanted to be married.

Husband filed for divorce in November 2014, on the grounds of irreconcilable differences. The family court held its final hearing the following year. Generally, the parties agreed upon the values of their assets, which approximate $4 million. On its Marital Property Allocation/Distribution of Property spreadsheet, the family court arrived at a net marital estate of over $2.1 million. This figure, however, does not take into consideration an Ameritrade stock account of $1.6 million that the parties divided equally, and the marital residence. The parties agreed to sell the marital home, and split those proceeds.[2] The family court granted the divorce, distributed the marital property,[3] and awarded Wife $4,000.00 a month in permanent spousal support.

When the family court entered its order, Wife was sixty-two years old, and Husband was sixty-three years old. Looking ahead to Husband's eventual retirement, the

---

[1] Wife is a cancer survivor; the disease is now in remission.
[2] The value of the marital residence is approximately $400,000.00; there is no debt on this property.

[3] Wife received two condominiums of her choice, and Husband received the remaining one. To equalize the equitable distribution, the family court ordered Husband to pay Wife $226,721.23; these funds will be transferred from Husband's Radiology Associates 401K to Wife's Radiology Associates 401K by qualified domestic relations order to be prepared by counsel for Wife.

family court determined that his retirement would constitute a significant change in circumstances, subjecting the final order to modification.

Wife appealed portions of the family court's ruling to the circuit court, and it affirmed. The circuit court stated: "The conclusions of a trial judge, sitting without a jury, on questions of fact are entitled to peculiar weight and consideration because the judge is in the best position to determine the credibility of the witnesses." It concluded that the factual determinations made by the family court were not clearly erroneous, and it did not abuse its discretion in applying the law.

On appeal to this Court, Wife raises the same assignments of error she raised below. We will discuss the relevant facts in more detail below as they relate to our resolutions of the issues. Specifically, Wife contends the spousal support award was "grossly inadequate" because of the disparity of the parties' incomes. Wife also asks us to overturn four factual determinations that form the foundation of the family court's equitable distribution order. She contends the family court improperly classified an Individual Retirement Account (IRA), worth $76,363.00, and $271,115.00 of Husband's 401K,[4] as Husband's premarital property. She also contends the family court improperly classified two payments Husband made from the marital bank account, after the parties

---

[4] The family court mistakenly listed the $271,115.00 figure in the equitable distribution worksheet. The parties agreed that the amount of the 401K claimed by Husband to be premarital was $249,685.00.

4

separated but before the divorce action was filed, as marital expenditures: $33,700.00 to a family friend for the care of Husband's ailing parents; and $25,000.00 to the mother of his other child for that child's college expenses. We address these issues below.

## II. STANDARD OF REVIEW

This Court has held that:

> "In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review." Syl. Pt. 2, *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003).

Syl. Pt. 1, *Conrad v. Conrad*, 216 W.Va. 696, 612 S.E.2d 772 (2005).

With regard to spousal support, this Court has held: "Questions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matter[] will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

Furthermore, with regard to the family court's factual findings that underlie its equitable distribution order, this Court will not set aside findings of fact, whether based on oral or documentary evidence, unless they are clearly erroneous. *See e.g.*, *Gordon v. Gordon,* 923 A.2d 149 (Md. Ct. Spec. App. 2007) (observing that

identification of marital and non-marital property is question of fact and appellate court will not disturb factual finding unless it is clearly erroneous). Generally, if there is competent evidence to support factual findings, this Court will not reverse those findings as clearly erroneous. *See* Syl. Pt. 3, *Estate of Bossio v. Bossio*, 237 W.Va. 130, 785 S.E.2d 836 (2016) ("'A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.' Syl. Pt. 1, in part, *In re Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).").[5] It is within the sole province of the family court, as fact-finder, to decide issues of credibility, and this Court will not disturb those determinations.[6] Even where testimony is uncontroverted, a fact-finder is free to disregard such testimony if it finds the evidence self-serving, and not credible.

---

[5] *See also Rebel v. Rebel*, 833 N.W.2d 442, 448 (N.D. 2013) (noting "court's division of property is a finding of fact that will not be overturned unless it is clearly erroneous. Findings of fact are presumptively correct. The complaining party bears the burden of demonstrating on appeal that a finding of fact is clearly erroneous. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or, although there is some evidence to support it, on the entire record, we are left with a definite and firm conviction a mistake has been made.") (internal quotation marks and citations omitted).

[6] *See also Vargo v. Schwartz,* 940 A.2d 459 (Pa. Super. Ct. 2007) (stating finder-of-fact in divorce action is entitled to weigh evidence presented and assess its credibility (continued . . .)

## III. DISCUSSION

### A. Spousal Support

In West Virginia Code § 48-6-301(b) (2015), the Legislature set forth a comprehensive list of factors that the family court "shall" consider in determining the amount of spousal support. These factors include:

> (1) The length of time the parties were married;
> (2) The period of time during the marriage when the parties actually lived together as husband and wife;
> (3) The present employment income and other recurring earnings of each party from any source;
> (4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;
> (5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;
> (6) The ages and the physical, mental and emotional condition of each party;
> (7) The educational qualifications of each party;
> (8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

and in so doing, finder-of-fact is free to believe all, part, or none of evidence and appellate court will not disturb its credibility determinations).

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

*Id.* § 48-6-301(b), in part.

In reviewing the spousal support order in this case, we readily observe that the family court focused heavily on the fifth statutory factor. It stated that Wife received "significant assets as a result of equitable distribution," including the Ocean City condominium which is rental property (that could be sold for $250,000.00), her half of the Ameritrade account of $800,000.00, and a separate retirement account of

8

$200,000.00. The court determined these assets should generate $5,000.00 per month.[7] Relying on the fourth statutory factor, the court imputed income to Wife of $25,000.00 per year, which is approximately $1,500.00 per month. The court noted that Wife claimed her monthly expenses were approximately $12,000.00, but it found her expenses were "overstated." The court also noted the length of the current marriage and the fact that Husband paid Wife rehabilitative alimony following the first marriage. Based on these considerations, the court awarded Wife $4,000.00 a month in permanent spousal support.[8]

Wife maintains the family court arbitrarily determined that her expenses were inflated. Moreover, she claims it failed to appropriately consider the huge disparity in the parties' income considering the fact Husband earns $40,000.00 a month and she has no income, and none is anticipated. She claims that spousal support of $4,000.00 is not enough to cover even her basic housing and health insurance costs. Wife argues that

---

[7] Even though Wife was eligible to draw Social Security retirement benefits based upon Husband's contribution, the court did not factor in this potential income.

[8] The family law judge apparently failed to record the parties' testimony and argument from counsel on the issue of spousal support.

the court gave little weight to many of the statutory factors, including the total amount of time the parties were married and the fact that she has never worked outside the home.[9]

Husband disagrees with Wife's attempt to characterize herself as a homemaker, and he claims to be the one who was more responsible for caring for the children. He agrees with the family court's assessment that Wife could easily earn $25,000.00 a year. Husband essentially faults Wife for choosing not to gain employment, while at the same time moving to an area outside of Washington, D.C., where the cost of living is much greater. Ultimately, he supports the family court's award of $4,000.00 a month, and states that Wife can more than meet her monthly expenses.

We recognize that as long as the family court fully considers the mandatory statutory factors, and its award of spousal support is within the parameters of reasonableness, this Court should not disturb the award on appeal. *See* Syl., *Nichols*, 160 W.Va. at 514, 236 S.E.2d at 36. However, in this case, we conclude that the facts show Wife was harshly short-changed, considering the great disparity of the parties' income. Moreover, included among the factors that the family court was required to consider in determining the amount of the spousal support award is "[t]he standard of living established during the marriage[.]" W.Va. Code § 48-6-301(9). The family court largely

---

[9] Wife asks us to add the years from the parties' first and second marriage. We decline to do so, especially considering the fact that Husband paid rehabilitative alimony following the first marriage.

ignored this factor. As a practical matter, its ruling would effectively force Wife to deplete her retirement savings while Husband continues to earn a substantial monthly income and enhance his retirement savings.

Although the family court must consider Wife's income-earning ability pursuant to West Virginia Code § 48-6-301(b)(4), it was also required to consider the other factors, including those "necessary or appropriate . . . to arrive at a fair and equitable grant of spousal support[.]" *Id*. § 48-6-301(b)(20). We find that under the facts presented here, the court's imputation of income to her constituted a clear abuse of discretion, requiring reversal. Wife has never worked outside the home, and Husband clearly accepted this status quo when the couple remarried in 2000. Wife was sixty-two years of age when this divorce action was filed, and she certainly has no plans to join the workforce now. Therefore, given the Wife's lack of present employment, the length of this marriage, the standard of living enjoyed by the parties, and the Husband's undisputed ability to pay, there is no statutory or other mandate that the family court impute income requiring that she obtain a full-time job at this stage of her life.

Simply stated, an unemployed party seeking alimony was awarded only 10% of the payor's gross monthly income of $40,000.00. Considering the duration of this fourteen-year marriage, this spousal support award was patently unfair. Accordingly, we reverse the judgment with regard to spousal support and remand to the circuit court with instructions to remand to the family court. The family court must reconsider the amount

11

of spousal support in view of all the statutory factors, and the totality of the circumstances that exist in this case to arrive at a fair and equitable grant of spousal support.

## B. Equitable Distribution

Wife further disputes the family court's factual findings with regard to certain items of equitable distribution. Although she sets set forth four assignments of error on this issue, in all assignments she essentially asserts that the family court erred in finding that Husband established, with the requisite degree of evidentiary certainty, the classification of certain retirement accounts of Husband as pre-marital, and classification of certain post-separation expenditures he made as marital expenses. Husband contends that he produced uncontroverted evidence on these items and Wife failed to present sufficient evidence to challenge his evidence or credibility.

We begin with the basic premise that the family court "shall divide the marital property of the parties equally between the parties." W.Va. Code § 48-7-101. The statute defines marital property as all property acquired during the marriage with the exception of gifts of inheritance. *Id*. § 48-2-1. The same principle applies to marital debts, e.g., obligations or payments made during the marriage. *See Downey v. Kamka*, 189 W.Va. 141, 144, 428 S.E.2d 769, 772 (1993) (stating "equitable distribution allocates the assets and liabilities between the parties."). In syllabus point two of *Stuck v. Stuck*, 218 W.Va. 605, 625 S.E.2d 367 (2005), this Court held:

12

> "Equitable distribution . . . is a three-step process. The first step is to classify the parties' property as marital or nonmarital. The second step is to value the marital assets. The third step is to divide the marital estate between the parties in accordance with the principles contained in [former] W.Va. Code, 48-2-32 [now W.Va. Code § 48-7-103]." Syllabus Point 1, *Whiting v. Whiting,* 183 W.Va. 451, 396 S.E.2d 413 (1990).

Wife disputes the classification of Husband's IRA worth $76,363.00 as premarital property despite the absence of any documentation that he acquired these funds before the date of their marriage. Husband testified that he set up this account when he moved to Martinsburg, twenty-five years ago, prior to the marriage. Husband worked a second job in Kentucky and would fly there to work over the weekend, for two years. Husband testified that he did not have any documentary evidence that he acquired this account prior to marriage; he explained that he never put any funds in the account during the marriage and the account increased due to passive appreciation and growth. Wife offered no rebuttal testimony on this issue. On appeal, she does not challenge Husband's credibility, but essentially argues that in the absence of documentary evidence overcoming the statutory presumption of equal distribution of the property, she is entitled to one-half of these proceeds. Wife relies on *Crea v. Crea*, 222 W.Va. 388, 664 S.E.2d 729 (2008), wherein we affirmed the family court's finding that Mr. Crea failed to meet his burden of proof in showing that certain credit card debt was marital debt because he "provided no documentary evidence, nor did he provide any explanation as to why he could not obtain the proper documentation, even though the credit cards at issue were in his name and under his dominion." *Id.* at 391, 664 S.E.2d at 732.

13

Husband responds that the instant case is distinguishable from *Crea*, and we agree. Husband provided an explanation as to why he could not obtain documentation due to the age of the account, and because it was converted by the pension administrator several times. Husband testified that he attempted to gather documentary evidence but was unable to do so. Significantly, the family court found his testimony on this issue to be credible.

This Court will not disturb the family court's credibility finding. Husband's burden required him to overcome a legal presumption that the subject monies comprised marital funds. The family court properly applied this presumption, held him to his burden and employed a preponderance of evidence standard. After applying the correct burden of proof, the family court found Husband's testimonial evidence was adequate and persuasive. The absence of documentary support for Husband's testimony does not invalidate the ruling, because it was within the province of the family court to determine the weight accorded his testimony. *See e.g.*, *In re Marriage of Henke,* 728 N.E.2d 1137 (Ill. App. Ct. 3d 2000) (finding trial court had properly classified certain amount of property as marital where wife's testimony concerning contributions was sufficient to trace contributions of marital estate to nonmarital property by clear and convincing evidence).

Similarly, Wife disputes the classification that $271,115.00 of Husband's 401K (valued at $1,217,534.00) was premarital property despite the absence of any

14

documentation of the actual value of this account on or around the date of their marriage. This account was an employer-based 401K through Husband's medical practice. Husband worked for his business prior to the marriage and had contributed to the retirement account prior to marriage. The original retirement plan was in the form of a defined benefit plan; it later changed to a defined contribution plan, and the plan administrator changed several times. Husband submitted evidence from a certified public accountant who determined the present value of the premarital portion of this 401K. On appeal, Wife claims the family court erred in finding this portion was premarital when Husband failed to produce a statement from his 401K at or around the date he claims this premarital cash equivalent was deposited.

Husband counters that the lower court properly relied on the opinion from his certified public accountant regarding the present value of the premarital portion of the 401K. Husband testified below that he attempted to contact all previous plan administrators but was unable to obtain any specific information and no specific documentary evidence was available as to the amount in the pension plan because it was more than sixteen years old. The family court accepted his testimony on this issue and specifically found him to be credible. We will not disturb this credibility finding. However, we recognize that the family court clearly made a mistake in the marital allocation worksheet on this issue. The parties agreed below that Husband was claiming that the premarital portion of this account was $249,685.00, not $271,115.00.

Wife next disputes the classification that Husband's $33,700.00 payment to his family friend, Mr. George Mouratides, on October 1, 2014, for the care he provided to Husband's elderly parents in Ethiopa, was a legitimate, marital expenditure. Wife does not allege any impropriety with regard to this transaction, but simply contends Husband failed to offer any documentation (other than the check) to support it. She notes this payment was made more than four years after Husband's father passed away.[10] Wife argues that, pursuant to West Virginia Code § 48-1-237(5), this expenditure was presumptively non-marital. *See id*. (providing that separate property acquired after date of separation but before order of divorce, is separate property).

Husband responds that the family court's finding was not clearly erroneous. His parents' caregiver, Mr. Mouratides, moved to the United States and told Husband he owed him for taking care of his ailing parents, and Husband agreed.[11] Husband claims he made the payment to Mr. Mouratides before he was even aware that Wife wanted to end their marriage; Wife told him at the time she moved to Maryland that she wanted to be near her medical provider. Husband states that in October 2014, he was making payments to reduce the parties' debts, and, this payment was simply one of those marital expenses.

---

[10] It is not clear from the appendix record when Husband's mother passed away.

[11] Husband explained: "my father had a stroke in April, and he died in July, so all these months he had to be taken care of. My mother had a hip fracture, had a tumor and injury on her brain with seizures, and so, she was bedridden for a whole year[.]" Husband relied on Mr. Mouratides to make arrangements for the care for his parents in Ethiopia, while husband worked in the United States.

16

In fact, Husband paid over $100,000.00 in advance mortgage payments on the condominium where Wife was living during this time. The family court accepted his testimony on this issue and specifically found Husband to be credible. We will not disturb this credibility finding.

Finally, Wife disputes the classification that Husband's $25,000.00 payment to the mother of his other child, Ms. Tersit Galelat, for college expenses for this child, made after the parties separated, was a legitimate marital expenditure.[12] Wife claims that she should not be responsible for this payment. It was personal to Husband, completely voluntary, and not a court-ordered domestic support obligation.

Husband replies that he made similar payments for his son throughout the marriage; he reimbursed the child's mother for the last four years when she paid this child's tuition at Virginia Tech. Husband further testified that since his son was graduating, this was his last tuition payment. He treated all the children the same and Wife never previously complained. He asserts the family court properly found this was a marital expenditure especially when he made this payment before he was even aware there were marital difficulties. The family court accepted Husband's testimony on this

---

[12] The parties had 529 savings accounts for the children's educational expenses. At the final hearing, they agreed to utilize these accounts for the children's education, and divide any unused funds equally among the three children as gifts.

issue and specifically found him to be credible. We will not disturb this credibility finding.

In sum, Wife left Husband's evidence on the above issues wholly unchallenged, deciding instead to rest her arguments on his burden of proof. This position is unavailing.[13] Having concluded that the family court's factual findings regarding classification of assets were not clearly erroneous, we likewise conclude that its relatively equitable division of the parties' marital assets was not an abuse of discretion.

## IV. CONCLUSION

For the reasons stated above, we find sufficient factual support in the record for the family court's equitable distribution findings; thus, we affirm that portion of the circuit court's order, with the exception that we order the circuit court to make the correction that Husband's premarital portion of his 401K retirement account was $249,685.00. We reverse the award of spousal support, and remand this case to the circuit court with directions to enter an order remanding the case to the family court for further proceedings consistent with this opinion.

---

[13] This Court has held that a *criminal conviction* may rest on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, and that is a question for the finder-of-fact. *See State v. Beck*, 167 W.Va. 830, 844, 286 S.E.2d 234, 243 (1981). Clearly then, a family court's classification of property for purposes of equitable distribution can rest on credible, uncorroborated testimony of a party.

Affirmed, in part, reversed, in part, and remanded.