IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

**April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**CASSANDRA W.,**
**Petitioner Below, Petitioner**

**v.) No. 24-ICA-445**        (Fam. Ct. Marion Cnty. Case No. FC-24-2014-D-340)

**STEVEN T.,**
**Respondent Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Cassandra W.[1] ("Mother") appeals the Family Court of Marion County's October 7, 2024, final order modifying the parenting plan granting Respondent Steven T. ("Father") primary custody.[2] Father responded in support of the family court's decision. Mother filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

By way of background, the parties were previously married but divorced by order entered on February 24, 2015. Two children were born of the marriage, namely, M.W. ("Child"), born in 2011, and C.W., born in 2006, with the older now having reached the age of majority. After the divorce, Father relocated to North Carolina and exercised parenting time during the summer and during extended school holidays. The parties' parenting plan was later modified by order entered on October 11, 2019, which reduced Father's summer parenting time to the month of July but increased his holiday time.[3]

---

[1] To protect the confidentiality of the juvenile involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Mother is self-represented. Father is represented by P. Todd Phillips, Esq.

[3] For the summer of 2024, the parties agreed that Child would spend June with Father instead of July, due to her extra-curricular activities. Father returned Child to Mother on June 30, 2024.

1

Events leading to this appeal began on or about July 8, 2024, when Mother sent text messages to C.W., stating that he should kill himself, she hoped he died, and that she was having suicidal ideation. That same day, Mother went for a walk but did not take her phone leaving Child alone at home; for at least nine hours, Child was left to wonder whether Mother was okay. Child Protective Services ("CPS") was contacted due to Mother's text messages and Child being left alone for an extended period. Police were also called to conduct a welfare check on Child. CPS issued a safety plan where C.W. would care for Child until Father could drive from North Carolina to pick her up. Thereafter, CPS spoke with Child, who stated that she wished to remain in North Carolina with Father. After an approximately week-long investigation, CPS did not substantiate the allegations against Mother.

On July 25, 2024, Father filed both a motion for emergency ex parte relief and a petition for modification, wherein he included the details of Mother's alleged suicidal ideation. A hearing on Father's emergency ex parte motion was held on August 8, 2024, for which Mother was served but did not appear. An order was entered on August 12, 2024, which directed that Child would live temporarily with Father and that Mother would have no in-person parenting time until further order of the court, although phone calls were permitted.

Mother filed an answer and counterclaim alleging that Father was trying to alienate her from Child. Mother also stated in her answer that she had been a certified childcare provider who worked with CPS workers for eight years, and that while providing childcare services, her home had to be inspected by CPS twice yearly and nothing was ever found to be amiss. Mother denied all allegations that she suffered from mental illness.

On September 27, 2024, a hearing on Father's petition for modification was held, for which both parties appeared and testified. At that hearing, upon finding that Child was sufficiently mature, the court conducted an in-camera interview. Child informed the court that she preferred to live with Father in North Carolina and visit Mother because Mother kept her up at night yelling. Child expressed a preference for reversing the parenting plan, where she would live with Father most of the year but visit Mother during summer and extended school breaks. C.W. testified about the text messages he received from Mother in July 2024. The court found both children's testimony to be credible and that Mother's testimony was not credible.[4] The court further found that the parties' parenting plan was manifestly harmful to Child, as it put her in a situation that negatively affected her mental health by being around Mother. By order entered on October 7, 2024, the family court

---

[4] Mother had difficulty presenting her case, as she did not understand the process of properly serving exhibits to Father beforehand and entering exhibits into evidence.

found that the requirements of West Virginia Code § 48-9-209(f)(5)(E) (2024)[5] were met and adopted Child's preferred parenting arrangement, granting Mother visitation during the month of July and during lengthy school holidays. It is from the October 7, 2024, order that Mother now appeals.

For these matters, we use the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

On appeal, Mother raises eight assignments of error. First, she asserts that the family court erred when it accepted Father's exhibits that were attached to his motion but refused to accept the exhibits that were attached to her counterclaim. We disagree. West Virginia Code § 51-2A-7(a)(1) & (4) (2013) grants family courts the authority to "manage the business before them" and "supervise the production of evidence." The record reflects that Mother had the same opportunity to present exhibits as Father, and, in fact, presented CPS documentation and exhibits related to Child's school performance. Therefore, we find no error or abuse of discretion in how the family court managed the evidence before it and affirm the family court on this assignment of error.

In her second assignment of error, Mother contends that the family court misapplied West Virginia Code § 48-9-401(b), which states "[i]n exceptional circumstances, a court may modify a parenting plan if it finds that the plan is not working as contemplated and in some specific way is manifestly harmful to the child, even if a substantial change of circumstances has not occurred." In support of her argument, she states that the family court merely found that Child suffered "stress" and not "harm, as defined by law."

---

[5] West Virginia Code § 48-9-209(f)(5)(E) states that a court must consider whether a 50-50 allocation is:

> Contrary to the firm and reasonable preferences of a child who is 14 years of age or older; and to accommodate, if the court determines it is in the best interests of the child, the firm and reasonable preferences of a child under 14 years of age, but sufficiently matured that he or she can intelligently express a voluntary preference for one parent[.]

Mother's argument lacks merit. The Supreme Court of Appeals of West Virginia has consistently defined "manifestly harmful" as used in West Virginia Code § 48-9-401(b) as "obviously harmful or plainly harmful." Syl. Pt. 6. *Skidmore v. Rogers*, 229 W. Va. 13, 725 S.E.2d 182 (2011). In *Skidmore*, the Court stated, "the term 'manifestly' does not require any specific level of harm, but merely means that the harm is readily apparent." *Id.* at 23, 725 S.E.2d at 192. In the case at bar, the record reflects through text messages, CPS records, and both children's testimony, that Mother has kept the children up late yelling, sent inappropriate text messages to C.W., and expressed suicidal ideation prior to leaving Child alone for at least nine hours. With such evidence before it, the family court did not abuse its discretion when it found that Mother's behavior was manifestly harmful to Child, and we affirm the family court on this assignment of error.

In her third assignment of error, Mother argues that the family court erred by discrediting her testimony and finding Father's testimony to be credible even though it was contradictory. As this Court has previously said: "Under the clearly erroneous standard, an appellate court does not reweigh the evidence and cannot reverse a family court's findings simply because it may have viewed the evidence differently. *See Mulugeta v. Misailidis*, 239 W. Va. 404, 408, 801 S.E.2d 282, 286 (2017). Finally, a family court is entitled to deference to the extent it relies on determinations it made of the parties' credibility. *See Thomas E. v. Amy F.*, No. 13-0176, 2013 WL 5708438, at *2 (W. Va. Oct. 21, 2013) (memorandum decision)." *Minor v. Ford*, 24-ICA-245, 2025 WL 658325, at *3 (W. Va. Ct. App. Feb. 28, 2025) (memorandum decision). Though Mother disagrees with the family court's interpretation of certain evidence, resolution of conflicting evidence, and the inferences drawn therefrom, after a review of the record we cannot conclude that the family court's findings were clearly wrong or the application of the facts to the law was an abuse of discretion.

Fourth, Mother asserts that the family court misapplied West Virginia Code § 48-9-209(f)(5)(E), as quoted above in footnote five. We disagree. When a family court is tasked with issuing a parenting plan, it must consider whether 50-50 custody is contrary to the firm and reasonable preference of a child under the age of fourteen, if that child is deemed "sufficiently matured that he or she can intelligently express a voluntary preference for one parent." *Id.* Here, Child was nearly fourteen years old, and the family court determined that she was "intelligent and well spoken" and noted that she "ha[d] solid reasons for her preferences." The family court acted within its statutory authority, and we find no error or abuse of discretion in adopting Child's firm and reasonable preference to reside mostly with Father.

In her fifth, sixth, seventh, and eighth assignments of error, Mother contends that the family court erred by modifying the parenting plan, cherry-picked the facts from the

4

CPS report, did not provide clear instructions for Christmas break parenting time,[6] and forced her to change her testimony regarding an allegation that she sabotaged C.W.'s full scholarship to his chosen university program. Upon review, we find that Mother's arguments fail to establish clear error or an abuse of discretion by the family court. Mother's brief and reply brief consist primarily of statements relating to her displeasure with the proceedings below, unsubstantiated allegations that Child was influenced by Father's family members and demonstrates a lack of personal accountability regarding the events that took place in July of 2024. Mother fails to identify how these alleged errors affected the family court's ruling. Further, Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires, in relevant part, that "[t]he argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." Here, Mother cites to no portion of the record in support of her claims. As such, we find no basis in law to warrant relief.

Accordingly, we affirm the family court's October 7, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[6] Mother's assertion that the family court failed to provide clear instructions for Christmas break is misplaced. Although the wording could have been clearer in the final order, it does provide instructions on how Christmas break is to be divided between the parties.