IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED
February 27, 2026

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DANIEL FORD,**
**Petitioner Below, Petitioner**

**v.)  No. 25-ICA-243**    (Fam. Ct. Marion Cnty. Case No. FC-24-2024-D-240)

**RONDA FORD,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Daniel Ford ("Husband") appeals the Family Court of Marion County's February 24, 2025, final divorce order awarding attorney's fees and spousal support to Respondent Ronda Ford ("Wife") and the court's May 16, 2025, order denying his motion for reconsideration of the final divorce order.[1] Wife did not participate in this appeal.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's orders is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married for twenty years. They began their relationship in 1996, when Wife was twenty-three and Husband was thirty-two. The parties were subsequently married in 2004 and lived together for twenty-three years. No children were born during the marriage but both parties entered the marriage with children from previous relationships.[3]

---

[1] Husband is represented by Samantha L. Koreski, Esq., and Amy Lanham, Esq. Wife is represented by Christopher M. Wilson, Esq., who filed a notice of appearance with this Court. We note, however, that Wife's counsel made no other filings on appeal.

[2] We recognize our limited and circumspect review of a family court order in an uncontested appeal, like this one, where the respondent fails to participate on appeal to support the order.

[3] Husband had a son, and Wife had a son and a daughter.

1

Wife was diagnosed with cancer in 2022. Two years later in August of 2024, Wife discovered that Husband had been allegedly engaging in ongoing extramarital affairs since the time of her cancer diagnosis in 2022, which resulted in Husband filing for divorce on October 15, 2024.

On February 20, 2025, the family court held a final hearing on Husband's divorce petition during which both parties were represented by counsel.[4] All matters of division and distribution of marital property had been resolved, and details of the parties' property settlement agreement were read into the record. Wife requested spousal support and attorney's fees. Husband waived spousal support.

The family court heard testimony from the parties, Wife's daughter, Husband's girlfriend, and a law enforcement officer during the February 20, 2025, final divorce hearing. After hearing testimony and arguments from counsel, the court entered a final divorce order on February 24, 2025. Relevant to this appeal, regarding spousal support and attorney's fees, the family court cited the factors contained in *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996) and West Virginia Code § 48-6-301, and made the following findings:[5]

---

[4] Husband's attorney on appeal was not his counsel of record below.

[5] The February 24, 2025, final order also cited to *Pearson v. Pearson*, 200 W. Va. 139, 145, 488 S.E.2d 414, 420 (1997), where the Supreme Court of Appeals of West Virginia ("SCAWV") held the following:

> We made abundantly clear in syllabus point 2 of *Sandusky v. Sandusky*, 166 W. Va. 383, 271 S.E.2d 434 (1981) that "'[a]limony must not be disproportionate to a [person's] ability to pay as disclosed by the evidence before the court.' Syllabus, *Miller v. Miller*, 114 W. Va. 600, 172 S.E. 893 (1934)."

The family court also cited that

> [i]n appropriate circumstances, an enhancement of an award of maintenance/alimony based on the degree of fault is justified. Enhancement of a maintenance/alimony award by a fault premium may be awarded when additional support is required to reimburse the injured spouse for expenses directly related to the fault or to assure that the injured spouse continues to have the standard of living enjoyed during the marriage. A fault premium may also be applied to discourage the fault or behavior that contributed to the dissolution of the marriage. In determining an award of maintenance/alimony enhanced by a fault premium, the circuit court must consider the concrete financial realities of the parties.

2

- The parties were married for twenty years and lived together for twenty-three years.
- Wife worked as an in-home care provider off and on during the marriage. Between 2013 and 2021, Wife worked full-time and, at times, earned more money than Husband, though her wages were variable. At the time of the hearing, Wife was working six hours per week. The last hourly wage she testified to was $20 per hour. Wife is seeking other employment with benefits as she has battled lung cancer, requires follow-up care every six months, and will no longer be on Husband's health insurance.
- Husband has been employed throughout the marriage and for his current employer since 2019. He earns monthly gross wages of $7,503.30 based upon a paystub filed with the court on February 19, 2025.
- Both parties have a high school education. Husband had some additional training which benefits his current employment.
- Husband is sixty-three years old. He is in good physical and mental health. Wife is fifty-four years old. She is in good physical and mental health. She has recovered from her lung cancer diagnosis but requires follow-up monitoring.
- Wife came into the marriage with two children. Her daughter lived with the parties full-time. Wife's son and Husband's son were in and out of the home. Wife cared for the children. Wife also provided labor and assistance with the parties' home improvements enabling them to more than double the value of the real estate they have owned their entire marriage. When Husband traveled out of town for work, Wife took care of the home, inside and out. Wife still provides care for Husband's father, who is ninety-four years old and lives nearby. Husband does not provide care for his father. Wife acquiesced to all requests of Husband, including activities in the bedroom that caused her physical pain. Wife thought of Husband as "her best friend."
- The parties became the guardians of Husband's biological grandson. Wife did not work outside the home for approximately four years to care for the child until he was school aged.
- The parties had a good standard of living during the marriage. They were able to turn their modest home into a valuable piece of real estate. The parties would engage in activities such as side-by-side rides and yearly beach vacations to such destinations as Myrtle Beach and Key West.
- The employment opportunity Wife is seeking will not require additional education or training. She is unsure of what her anticipated income from that job might be.
- Wife has located a house she plans to purchase by using the equalization payment as the downpayment. Based upon the downpayment and loan

_Id._ at 146, 488 S.E.2d at 421.

amount, she has calculated her monthly mortgage payment at $1,200 per month.

- Neither party testified regarding his or her monthly budget. The court used Wife's spousal support request submitted as an exhibit to calculate Wife's monthly budget. The court used the budget submitted by Husband in his February 19, 2025, financial filing. Wife's reasonable monthly expenses total $3,982 per month. Wife's gross monthly income at the present time is estimated to be $520 (six hours per week at $20 per hour). Husband's reasonable monthly expenses set forth in his financial statement filed February 19, 2025, are $2,300. Husband has $5,000 in gross earnings remaining based on his monthly gross wages of $7,503.30. Husband has the financial ability to pay spousal support. Wife has a need for spousal support.
- Husband is at fault for the breakup of the marriage. Wife provided credible testimony that Husband was/is involved in an extra-marital relationship.
- Wife was diagnosed with lung cancer in 2022.
- In September of 2024, when Wife discovered a cache of hidden video files on Husband's phone depicting [Husband's witness] engaged in sexually explicit acts, Husband denied any type of relationship with [Husband's witness] other than friendship.
- The parties separated on September 23, 2024, the day Wife discovered the videos on Husband's phone. Husband's father lives alone near the parties' home and has an extra bedroom available for Husband; however, Husband instead went to [Husband's witness'] home, where he currently lives. Both Husband and [his witness] testified that Husband is sleeping on the couch. The court did not find this testimony credible.
- Husband is residing in [his witness'] home rent free, pays no utilities, and only provides his own food. Based upon the entirety of the evidence, the court did not find Husband or [his witness'] testimony that they were/are "just friends" to be credible.
- Wife incurred attorney's fees in the amount of $3,500 for a divorce she did not want until she caught Husband cheating.
- The court found Wife to be credible.
- No other factors were presented to the court other than the aforementioned.

Based on these findings and pursuant to West Virginia Code § 48-6-301, the *Banker* factors, and the SCAWV's holdings in *Pearson*, the family court's February 24, 2025, final divorce order awarded Wife spousal support in the amount of $1,500 per month and ordered Husband to pay Wife's attorney fees in the amount of $3,500.

On March 24, 2025, Husband filed a motion to reconsider the February 24, 2025, final divorce order alleging that Wife committed fraud, misrepresentation or other misconduct during the divorce hearing. Specifically, Husband claimed that Wife earned

$1,600 per week for unemployment during her cancer treatments, that Wife could work full time, that the family court should have considered Husband's net income instead of his gross income in determining spousal support, that Husband's expenses were not properly calculated, and that Wife advanced the sum of $7,000 in October of 2024, on the parties' home equity line of credit to pay her attorney fees.

On May 9, 2025, the family court held a final hearing on Husband's motion to reconsider the February 24, 2025, final divorce order. Thereafter, on May 16, 2025, the family court entered a final order denying Husband's motion to reconsider. In that order, the court found that Husband presented evidence of the parties' bank statements from their joint bank account and admitted that he had access to those bank statements prior to the February 20, 2025, final divorce hearing. Additionally, the court found that Husband did not have evidence that Wife misrepresented her current income at the time of the final divorce hearing and presented no evidence that Wife had the ability to be employed full time. The court specifically found that Husband "presented no evidence that contradicted [Wife's] testimony from the Final Hearing."

The family court additionally found that while Husband argued that the court did not consider his credit card debt to determine spousal support, he admitted that he failed to provide that information to the court at the final hearing although it was available to be presented. Regarding his income, the court found that Husband did not present any evidence regarding his net income and that it was Husband's responsibility to calculate his net income and present evidence of the same. The court determined that Husband did not present any evidence that Wife committed fraud, misrepresentation, or other misconduct during the divorce hearing and used the hearing on his motion to reconsider as an attempt to relitigate issues from the final divorce hearing. However, the court found that issues of Wife obtaining future employment warranted an order for Wife to notify Husband within ten days of any change in her employment. The court refused to hear other issues outside the scope of Husband's motion to reconsider as it was the only issue set for hearing. It is from the February 25, 2025, final divorce order and the May 16, 2025, order denying his motion for reconsideration that Husband now appeals.[6]

---

[6] Husband does not differentiate between the family court's final divorce order and its order denying his motion for reconsideration for the purposes of his arguments on appeal but asserts that he is appealing the order denying his motion for reconsideration. We note, however, that Husband filed his motion for reconsideration within the thirty-day timeframe for filing an appeal of the family court's final order and attached both orders to his notice of appeal as set forth in Rule 13 of the West Virginia Rules of Appellate Procedure. Rule 28 of the West Virginia Rules of Practice and Procedure for Family Court provides that "[i]f a motion for reconsideration has been properly filed within the time period to file an appeal, the time for filing an appeal is extended until thirty days after entry of the final order on the motion for reconsideration by the family court." *See Christopher I. v. Veronica I.,* No. 23-ICA-460, 2024 WL 1728970, at *4 (W. Va. Ct. App. Apr. 22, 2024)

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Husband raises two assignments of error on appeal, which are closely related and will be consolidated for clarity and efficiency. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly"). Husband argues that the family court erred by awarding Wife spousal support and attorney fees. He contends that the family court failed to fully consider the mandatory statutory spousal support factors and the *Banker* factors to justify its determination following the motion for reconsideration hearing. We find no merit in Husband's arguments.

West Virginia Code § 51-2A-10(a) (2001) establishes five grounds for a family court to reconsider a prior order, providing that

> [a]ny party may file a motion for reconsideration of a temporary or final order of the family court for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been available at the time the matter was submitted to the court for decision; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) clerical or other technical deficiencies contained in the order; or (5) any other reason justifying relief from the operation of the order.

Husband's motion for reconsideration alleged that the family court's final divorce order relied upon Wife's fraud, misrepresentation, and other misconduct regarding her financial position, and implied that newly discovered evidence warranted relief. Husband's motion argued that he essentially paid for Wife's attorney fees twice because Wife advanced over $7,000 in October of 2024 on the parties' home equity line of credit to pay for her attorney fees.

(memorandum decision), *aff'd*, No. 24-304, 2026 WL 89504 (W. Va. Jan. 13, 2026). Thus, both orders are ripe for appellate consideration by this Court.

6

First and foremost, "a family court is entitled to deference to the extent it relies on determinations it made of the parties' credibility." *In re C.S.*, 251 W. Va. 147, 152, 909 S.E.2d 819, 824 (Ct. App. 2024) (citing *Thomas E. v. Amy F.*, No. 13-0176, 2013 WL 5708438, at *2 (W. Va. Oct. 21, 2013) (memorandum decision)). Further, "[a]n appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact." *In re the Marriage/Child. of Matt N. v. Michele I.*, No. 14-0090, 2014 WL 6724758, at *5 (W. Va. Nov. 25, 2014) (memorandum decision) (citing *State v. Guthrie,* 194 W. Va. 657, 669 n. 9, 461 S.E.2d 163, 175 n.9 (1995)). Here, the family court found Husband not credible and at fault in its final divorce order and subsequently found in its order denying his motion for reconsideration that Husband presented no evidence that contradicted Wife's testimony at the final divorce hearing to warrant relief on his allegation of fraud, misrepresentation, and misconduct. While Husband argues that the financial evidence he presented at the motion for reconsideration hearing clearly contradicted Wife's testimony during the final divorce hearing, our state's highest court has explained that credibility determinations fall within "the sole province of the family court, as fact-finder," and appellate courts "will not disturb those determinations." *Mulugeta v. Misailidis*, 239 W. Va. 404, 409, 801 S.E.2d 282, 287 (2017). "Even where testimony is uncontroverted, a fact-finder is free to disregard such testimony if it finds the evidence self-serving, and not credible." *Id.*

Husband also asserts that the family court erred by considering his gross income instead of his net income. West Virginia Code § 48-6-301(b)(3) (2018) provides that in determining a spousal support award, a family court shall consider "[t]he present employment income and other recurring earnings of each party from *any source*[.]" (Emphasis added). Further, it has been long held that "[q]uestions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl., *Nichols v. Nichols,* 160 W. Va. 514, 236 S.E.2d 36 (1977). Moreover, the family court found that Husband did not present any evidence regarding his net income and failed to update his financial statement even though his income changed since the filing of his original financial statement.[7] The family court used both parties' gross incomes for consideration in its final divorce order because gross incomes were provided as evidence. The spousal support statute's expansive language indicates the legislative intent to provide courts with comprehensive income information rather than limiting the information to post-tax amounts; thus, we find no error.

Husband additionally argues that the family court erred by considering improper evidence relating to the parties' financial positions; particularly, he contends that the

---

[7] The family court noted that Husband did file an updated financial statement shortly before the hearing, but that it was identical to his original financial statement and did not reflect his new income, nor did it calculate his net income.

court's failure to consider his monthly expenses, marital debt, and net income was erroneous and that the court erred by refusing to hear such evidence during the motion for reconsideration hearing. This Court has recently explained that parties may not utilize a motion for reconsideration as a means to relitigate issues and present evidence that was available to present at the time of the final hearing. *See Kierstyn C. v. Justin B.*, No. 23-ICA-200, 2024 WL 1256070 (W. Va. Ct. App. March 25, 2024) (memorandum decision) (affirming the denial of a reconsideration motion and concluding that the motion was a means to relitigate issues and present evidence that was available to present at the final hearing); *Mengel v. Mengel*, No. 23-ICA-415, 2024 WL 3581330 (W. Va. Ct. App. July 30, 2024) (memorandum decision) (affirming the denial of a reconsideration motion where the moving party sought to relitigate matters that had already been litigated during the parties' final divorce hearing); *Gregory E. v. Roxanna E.*, No. 16-0780, 2017 WL 3868189 (W. Va. Sept. 5, 2017) (memorandum decision) (holding that petitioner failed to explain how the evidence could not have been available at the time the matter was submitted to the court for decision).

The record reveals that Husband's attorney below filed an outdated and incomplete updated financial statement on Husband's behalf prior to the February 20, 2025, final divorce hearing. Notably, as Husband acknowledges in his brief on appeal, he presented no testimony or argument regarding his finances at the final divorce hearing.[8] During the hearing on the motion for reconsideration, Husband sought to present evidence that accurately reflected his financial position. However, he admitted that while that evidence was available for him to present at the time of the final divorce hearing, he failed to submit the information to the court for consideration. Therefore, we find no error in the family court's determination that Husband was attempting to relitigate issues from the final divorce hearing in its refusal to reconsider Husband's financial position.

Husband further argues that the family court failed to fully consider the statutory spousal support factors set forth in West Virginia Code § 48-6-301. We disagree. The family court fully considered all relevant spousal support factors. *See Banker v. Banker*, 196 W. Va. 535, 549, 474 S.E.2d 465, 479 (1996) (holding that the family court is only required to consider the relevant factors before deciding whether spousal support should be awarded). In fact, the record reflects that Husband recognized that the family court properly considered the spousal support factors in its final divorce order. Husband's motion

---

[8] To the extent this argument pertains to the February 24, 2025, final divorce order, we find that Husband failed to preserve the issue for review. *See* Syl. Pt. 2, *State ex rel. Cooper v. Caperton*, 196 W. Va. 208, 470 S.E.2d 162 (1996) ("To preserve an issue for appellate review, a party must articulate it with such sufficient distinctiveness to alert a circuit court to the nature of the claimed defect.").

for reconsideration stated that "[a]lthough there is *no question* that the [c]ourt conducted a detailed analysis of the spousal support factors . . . said analysis relies upon fraud, misrepresentation or other misconduct of [Wife]." (Emphasis added). We decline to disturb the family court's finding that Wife did not commit fraud, misrepresentation, or other misconduct and affirm the family court's award of spousal support.

The family court similarly applied the requisite *Banker* factors when awarding Wife attorney fees. When deciding whether a party should be awarded attorney fees, the family court shall consider:

> the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syl. Pt. 4, *Banker v. Banker*, 196 W. Va. 535, 474 S.E.2d 465 (1996). Here, the family court made detailed findings on the parties' respective financial conditions and Husband's responsibility for the breakdown of the marriage. Accordingly, we defer to the family court's award of attorney fees and affirm.

Upon review of the hearing, the family court heard both parties' arguments over the course of a lengthy final divorce hearing, made credibility rulings, and properly determined which evidence was salient to the issues being considered and the weight such evidence should be afforded. Though Husband disagrees with the family court's decision, there is no reason for the family court to reconsider its final divorce order merely because Husband failed to present available evidence and argument at the time of the final divorce hearing and was then dissatisfied with the outcome. While Husband essentially asks this Court to review the evidence and reach a more favorable outcome, we decline to do so. As previously stated, we cannot reweigh the evidence, particularly when witness credibility played a role in the family court's determination. Thus, we cannot conclude that the family court's findings were clearly wrong or the application of the facts to the law was an abuse of discretion.

Accordingly, we affirm the family court's February 24, 2025, and May 16, 2025, orders.

Affirmed.

**ISSUED:** February 27, 2026

9

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White